THE STATE *ex Informatione* LOWE, *Prosecuting Attorney,*
*Appellant,* v. HENDERSON *et al.*

In Banc, July 6, 1898.

1. **Appellate Practice:** ADVANCEMENT OF CAUSE ON DOCKET. That
the schools of Kansas City and Westport may not be closed and the
collection of the school taxes therein may not be endangered, this
cause has been advanced out of its regular order in this court.

2. **Public Schools:** EXTENSION OF CITY LIMITS OVER SCHOOL DISTRICT.
The extension of the corporate limits of the municipality of Kansas
City over the corporate limits of and to include the city of Westport,
does not extinguish the school district of Westport, nor does it annex
the school district of Westport to that of Kansas City.

3. ———: ———: SEPARATE CORPORATION. Each legally organized
school district is an independent body corporate under the laws of
this State, and is not a subordinate department of the city govern-
ment, but independent thereof.

4. ———: ———: ———: COTERMINOUS BOUNDARIES. While it is prob-
ably true that all the territory within the city limits of cities of
one hundred thousand inhabitants, organized under the special pro-
visions of the Constitution, at the date of their organization, must be
included within the school districts organized for such cities, yet it
is also true that such school districts may include other territory not
included within the corporate limits of the city.

5. ———: ———: TITLE TO PROPERTY. In Missouri the title to school
property is vested in the school district as a *public* but not as a *munic-
ipal* corporation.

6. **Appellate Practice:** OBITER QUESTIONS: EXTENSION OF MUNICI-
PAL LIMITS OF KANSAS CITY. Where neither Kansas City nor West-
port is before this court calling in question the legality of the pro-
ceedings by which the corporate limits of the former were extended
to include the latter city, and a decision of that question is not neces-
sary to a correct disposal of the errors in the judgment below assigned
for review here, this court will not enter upon a discussion of that
outside matter on the motion of an outside party.

*Appeal from Jackson Circuit Court.*—HON. E. P. GATES, Judge.

AFFIRMED.

*Gage, Ladd & Small* and *R. B. Middlebrook* for appellant.

(1) The school laws of the State contemplate the existence of but one school district within a city, and that within its jurisdiction there shall at all times be embraced at least all of the territory within the corporate limits of such city. By operation of law, as a consequence of the annexation of the city of Westport to Kansas City, by the extension of the limits of the latter, the limits of the school district to Kansas City were also extended, so as to embrace the territory formerly within the limits of the school district of the city of Westport. *McGovern v. Fairchild*, 2 Wash. 479; *School Comm'rs v. Center Township*, 143 Ind. 391; *School Township v. School Township*, 109 Ind. 559; *McGurn v. Board of Education*, 133 Ill. 122; *Curtis v. Board of Education*, 43 Kan. 138. (2) In case of doubt between two possible constructions of a statute, that one should be adopted which will avoid inconvenience and not lead to an absurdity. *Kane v. Railroad*, 112 Mo. 39; *Railroad v. Interstate Com. Com.*, 162 U. S. 218; *Jersey Co. v. Davidson*, 29 N. J. Law, 424; *Kerlein v. Buell*, 1 Dall. 177; *Commonwealth v. Kimball*, 24 Pick. 370; *Lamar Water Co. v. City of Lamar*, 128 Mo. 188; *Boyd Paving Co. v. Ward*, 85 Fed. Rep. 27; *Ormsby v. Ottman*, 85 Fed. Rep. 492. (3) School districts, regarded as corporations, are creatures of the legislative will, which may destroy them at its pleasure. Cooley's Const. Lim. [2 Ed.], p. 191; *Laramie Co. v. Albany Co.*, 92 U. S. 397; *Mt. Pleasant v. Beckwith*, 100

U. S. 529; *St. Louis v. Allen*, 13 Mo. 400; *Rawson v. Spencer*, 113 Mass. 40.

*A. M. Allen* and *Frank H. Dexter* for respondents.

(1) The school laws have been so modified that any town, etc., whether incorporated or not, would become a single school district. *State ex rel. v. Heath*, 56 Mo. 237. (2) The Westport school district having been organized and become a body corporate and having been in existence for thirty years and being possessed of property valued at $150,000, and having maintained a school for nine months each and every year for the last thirty years, its organization can not now be called in question; neither can it be dissolved without some law authorizing it to be done, nor can its directors be disturbed in the discharge of their duties as such. (3) School districts are corporations organized under the general laws of this State and these corporations are entirely independent of the municipal government. *Water Works Co. v. School District*, 23 Mo. App. 241. (4) School district is a *quasi* corporation; the power rests with the people which is the corporate body. *Buckman v. School District*, 25 Mo. App. 85; *Knowles v. Board of Education*, 33 Kan. 692; *Heller v. Stremmel*, 52 Mo. 309; *School District v. School District*, 94 Mo. 617. (5) Each organized school district in the State is a body corporate and the territorial form of such body can only be changed in the manner pointed out by law. *School District v. Goodding*, 120 Mo. 72; *State v. School District*, 46 Iowa, 426; *State v. Marshall*, 48 Mo. App. 560. (6) School districts can only be organized out of territory which has not been previously organized for the same purpose. Section 7022, Revised Statutes 1879, which said statute has been carried into the revision of 1889.

*Perryman v. Bethune*, 89 Mo. 158. (7) No part of a school district can withdraw from the district when no vote is taken to unite with another district. *Shattuck v. Philips*, 78 Mo. 80; *Henry v. Dull*, 74 Mo. 443. (8) Where a district is divided the old corporation owns the property and is liable for the debts. *Board of Education v. School District*, 45 Kan. 560; *McCrum v. Board of Education*, 133 Ill. 129.

GANTT, C. J.—This is an information in the nature of a *quo warranto* to test the right of the respondents to the office of directors in the school district of the city of Westport. The proceeding was brought originally in the circuit court of Jackson county and upon a trial therein, ouster was denied, and the relator has appealed to this court.

Two questions are presented in the record: *First*, is the extension of the city limits of Kansas City as voted by the qualified voters of said city on December 2, 1897, valid? and, *second*, if valid, did such extension and the resulting extinction of the corporate existence of the city of Westport also destroy the existence of the school district of the city of Westport?

The facts, necessary to an intelligent consideration of these questions, are that the City of Kansas now Kansas City was incorporated by an act of the General Assembly of this State, approved February 22, 1853. Laws of Mo., 1852–3, p. 244.

In pursuance of the provisions of sections 16 and 17 of article IX of the Constitution of Missouri (1875) the City of Kansas framed a charter for its own government, which was ratified by the qualified voters of the city at an election held April 8, 1889, and became the charter of the city May 9, 1889. Under this charter the corporate name of the city was changed to Kansas City.

The town of Westport was organized by an act of the General Assembly of the State of Missouri entitled "An act to incorporate the Town of Westport in Jackson county," approved, February 12, 1857. In 1881 Westport was organized into a city of the fourth class in conformity with the provisions of section 4385 of the Revised Statutes of 1879.

On the sixteenth day of March, 1897, the common council of Kansas City passed a resolution reciting that "it was the desire of Kansas City by amendment to its charter to extend its corporate limits so as to include the city of Westport and other adjacent territory," etc. This resolution was furnished the mayor of Westport by the mayor of Kansas City. Pursuant to that resolution the mayor of Kansas City notified the mayor of Westport on the tenth of March, 1897, that it was the desire and intention of Kansas City to extend its corporate limits so as to include within said limits the city of Westport, "*if* and *when* the qualified voters of Westport shall desire and consent thereto as provided by law," and requested the mayor of Westport to order a special election to ascertain · the wishes of said voters upon the question. In pursuance of this notice the mayor of Westport called a special election for the twenty-eighth day of September, 1897, and the qualified voters of Westport by a vote of 1,034 for and 164 against said proposition elected that Westport should be included in Kansas City. Thereupon, upon receipt of the formal notification of the result in Westport, the law-making authorities of Kansas submitted to the voters of said city a proposal to extend the limits of Kansas City over Westport and ordered an election to be had the second day of December, 1897, and said proposal was published in four newspapers in said city for thirty days. The election in Kansas City resulted

in a vote of 5,731 for and 323 against annexation of Westport.

Prior to these proceedings the city of Westport had been organized into a school district under the laws of this State, and its corporate name was "The School District of the City of Westport.·' The defendants are the duly elected directors of said school district. Certain territory not embraced within the corporate limits of the city of Westport was attached to the school district of the city of Westport for school purposes. By the extension of the limits of Kansas City all of the territory within the corporate limits of the city of Westport was embraced. By such extension was also embraced all of the territory outside the corporate limits of Westport which had been attached to the school district of Westport for school purposes *except* a strip of country lying south of the southern limits of Kansas city as extended,. three quarters of a mile wide and two and a half miles long. Kansas City is organized into a single school district and has all the powers conferred by law upon school districts in cities of its size and as such has the government and control of the schools within the limits of Kansas City prior to the extension of the limits over Westport.

I.    In order to advise the school boards of Kansas City and Westport of their respective rights, and to avoid the danger of closing the public schools in said cities, or endangering the collection of the school taxes therein, this cause has been advanced out of its regular order.

Addressing ourselves to the discussion had by the counsel for the respective school boards, we find that the learned counsel for the Kansas City school board assume as their first postulate that "by operation of law, as a consequence of the annexation of Westport to Kansas City, the limits of the school district of Kansas

City were also extended so as to embrace the territory formerly within the limits of the school district of Westport." Unquestionably the condition of affairs growing out of the annexation does present many difficulties that have not been anticipated and provided for by the legislature in the statutes governing the schools or municipalities of the State. We must determine the question in the light of the existing laws. Certainly it is the policy of the State to make the school districts of cities like Kansas City coextensive with the corporate limits, but we conceive that this alone will not sustain the proposition that the annexation of new territory to the municipality, of necessity, also attaches it to the school district thereof, nor the reverse of that proposition, that because Westport's municipal government was merged in that of Kansas City its school district was also extinguished. Counsel concede that a school district is not a department of the municipal government like the fire department, police department or waterworks whose existence is an incident of the city government. On the contrary each organized school district is an independent body corporate under the laws of this State. Their characteristics and powers are well defined by the Kansas City Court of Appeals in *Waterworks Co. v. School District*, 23 Mo. App. 241, as follows, speaking of the school district of Kansas City: "By this act, I am of opinion, the divorcement of the school district of Kansas City from the municipal government is complete. It is an independent corporation in every vital particular. The title and control of the school buildings are effectually vested in the board of school directors, the school district corporation. The school board determines all questions as to the raising of money for revenue. The county officers are the agents by which the revenue is collected. The city government has no voice nor agency in the matter.

It has nothing whatever to do with the school buildings or other property of this incorporated district. . . . This affords additional evidence, to my mind, of the purpose of the legislature to make the school district a separate legal entity from the municipal organization." See, also, *School District of Macon v. Goodding*, 120 Mo. 67; *School District No. 1 v. School District No. 4*, 94 Mo. 617.

When once organized their corporate lives are unlimited, and remain unchanged until they are changed in the manner prescribed by the legislature. The whole system is the creation of the law-making power of the State, in obedience to a constitutional requirement. No doubt can exist of the power of the legislature to provide a school system which shall meet the demands of the people under different conditions, neither can it be questioned that it is no part of the duty of the judiciary to supply supposed defects in the legislative plan of education. The *argumentum ab inconvenienti*, so well put by counsel for the Kansas City school board, is certainly a strong presentation of some of the consequences that might flow from rejecting his premises, but has not convinced us that it is the prerogative of this court to supply what is clearly a *casus omissus*. The industry and research of counsel have brought into juxtaposition the various statutes tending to show the policy of the State generally to be, to make the school districts of cities coterminous with the limits of the several cities; still it is obvious that the exceptions to this general policy are just as marked, and that outlying country districts are attached to cities for school purposes, and whatever its boundaries, a school district is a distinct corporate entity, performing its own peculiar function, independently of the municipal corporation within the same confines. We agree with the learned circuit judge who tried this cause that plaintiff's con-

tention, that the existence of the city is a condition precedent to the formation of a school district of the kind now under consideration, is correct, but it does not follow that when organized it may not have territory outside of the city attached. While it is probably the correct view that all the territory within the city limits at the date of the organization must be included under the present law, it may also include other territory.

Counsel for the Kansas City school district have cited a number of decisions from other States, notably Indiana. The most casual reading of *School Township of Allen v. School Town of Macy*, 109 Ind. 559, will show that it was an action to quiet title to real estate, and the opinion turned upon the construction of section 4508, Revised Statutes 1881, of Indiana, which provided that "the title to all lands acquired for school purposes shall be conveyed to the township, incorporated town, or city for which it is acquired, in the corporate name of such township, town or city . . . . . . . for the use of the common schools therein. . . . . . . In all cases in which the title to any such land is vested in any other person or corporation than as above provided, it shall be the duty of the trustee for school purposes to procure the title to be vested as in this section provided." As the lands in that case were acquired for the people of the unincorporated town of Macy after its incorporation, it was entitled to have a conveyance to it as trustee to hold for school purposes. We have no such statutes. With us the title to school property is vested in the school district as a *public but not a municipal* corporation as in, Indiana. The *School Commissioners of Indianapolis v. Center Township et al.*, 143 Ind. 391, is along the same line and demonstrates that the title to school property is vested in the school city and the act of said State of March 3, 1893, provided

that when any territory which included real estate belonging to the school township by proper proceedings shall be annexed to a city, such real estate shall by virtue of such annexation at once become the school property of the city. The contest was that the township was entitled to recover the value of the school property thus taken into the city. It was held that in the absence of a legislative enactment the city could not be made to so contribute. The same result was reached in this State by the Kansas City Court of Appeals, in *District No. 6 v. District No. 5*, 18 Mo. App. 266. The case of *McGovern v. Fairchild*, 2 Wash. 479, was decided with reference to section 857, General Statute of Washington, which provided for the annexation of territory to a city district and upon the organization of the new district the title to all school property owned by any school district within the extended limits should vest immediately in the new district. Under that act the city district could assume that annexation of territory by operation of law included the school district. It is plain no such provision is to be found in our laws. The remaining authority relied upon by the counsel for the city district is *McGurn v. Board of Education of Chicago*, 133 Ill. 122. That case most nearly resembles the one at bar of any relied on by the relator. It is fair to say it goes far toward sustaining the contention of counsel. It has received the careful consideration which it deserves, but it is at war with our decisions and the spirit of our school system, as may be seen from a simple quotation therefrom. Thus it is said: "Nor is the repugnancy between the functions of these two classes of corporations established by the fact that, by our present school law, the charge and control of schools in cities having over 100,000 inhabitants is committed to a board of education, an organization which in some

points of view is to be regarded as a *subordinate department* of the city government and in others as an *independent municipal corporation.*" As already said in Missouri a school district is *not* "a municipal corporation," and it is in no sense "a *subordinate department* of the *city government,*" but is independent thereof. Hence we start from different premises from those assumed by the court in *McGurn v. Board of Education, supra,* and our conclusion is entirely different. Like his honor Judge GATES, we consider the decision in *State v. School District,* 46 Iowa, 425, as entirely in point, and coinciding with the policy of this State, and we adopt the views therein expressed in these words: "*Cities* and *school districts* have, under the statutes of the State, a corporate existence, and as such are endowed with certain rights and charged with certain duties. The objects sought to be obtained by the organization of each are essentially different. It is not possible, as at present constructed, to blend the two together so as to attain the objects sought in the organization of each. The school system of the State is complete within itself, and so must it be said as to the laws and regulations governing incorporated cities and towns. Both, however, are creatures of the statute, by which their corporate existence may be ended or their rights and duties, together with the territorial extent of both, enlarged or restricted. In providing for the extension or contracting of city limits, under the general law relating thereto, nothing whatever is said as to school districts, or the effect of such extension or contraction in reference thereto. . . . . . . . In the absence of any statute expressly providing that the extension of the limits of a city has the effect to bring under the control of a school district then existing within a city the territory so attached, it can not be so held. It can not be said to be done by operation

of law, when there is no such law. The necessity of the case does not require any such ruling, for, as has been said, these organizations exist independently of each other.''

Accordingly we answer, as he did, that the extension of the limits of Kansas City over Westport did not as a matter of law extend the lines of the school district of Kansas City over Westport and by operation annex the Westport district to the Kansas City district for school purposes. We think it also inevitably follows from the statutes invoked and the conclusions already reached that the extinction of the municipal corporation of Westport did not extinguish the Westport school district, and hence assuming that the extension was duly accomplished in pursuance of the Constitution and laws of this State it did not affect the Westport school district, and the writ of ouster against the directors is denied.

The writ in this case was issued at the instance of the school district of Kansas City upon the application of the prosecuting attorney of Jackson county and very properly so because it was a matter of vital importance to the schools of Kansas City and Westport. Had we reached the conclusion that the annexation of Westport would necessarily extinguish the Wesport school district, then the legality and regularity of the steps taken to effectuate that end would have also required a decision at our hands, but having been brought to the conclusion that though regular and lawful in every respect it would not affect the schools of Westport, this opinion should terminate at this point. Counsel interested for other interests obtained permission of the respondents to file a brief and make an oral argument attacking the extension, and we are urged to decide that question also. Without intimating any doubt whatever as to the correctness of Judge GATES's opinion

and conclusion on that question, we must decline to enter upon that discussion. Neither Kansas City or Westport in their municipal capacities are before this court. There is not the slightest intimation that either of said cities have any doubt of the validity of the proceedings looking to said annexation, and the mere fact that some person having private interests would like to have this court settle the question for his benefit is no reason why we should in the present condition of the docket discuss questions and raise doubts about corporate rights and actions when the corporations interested are not in court.

Having disposed of the only question properly in the case, we shall defer the consideration of the other until an actual *bona fide* case shall arise. Judgment of the circuit court is affirmed and ouster denied. SHERWOOD, BURGESS, ROBINSON, BRACE, WILLIAMS and MARSHALL, JJ., concur.