# SUPREME COURT

OF THE

## STATE OF MISSOURI

AT THE

OCTOBER TERM, 1904.

SCHOOL DISTRICT NO. 7, TOWNSHIP 57, RANGE 32, BUCHANAN COUNTY, MISSOURI, Appellant, v. SCHOOL DISTRICT OF ST. JOSEPH, BUCHANAN COUNTY, MISSOURI.

*In Banc, October 27, 1904.*

1. **SCHOOL DISTRICTS: Extending City Limits.** The extension of the city limits of a city of over 50,000 inhabitants and under 300,000, does not *ipso facto* extend the limits of the school district of the city over the adjoining school district included within the extension or any part of it.

2. ———: ———: **Statute of 1895.** The statute of 1895, being an amendment to section 8083, Revised Statutes 1889, and providing that "every extension that has heretofore been made or that hereafter may be made of the limits of any city, town or village; . . . shall have the effect to extend the limits of such city, town or school district to the same extent," was an amendment only to an article of the school law which relates to the government of schools in cities, towns and villages having less than 50,000 inhabitants. The only provision for changing the boundary lines of a district adjacent to a city district

(140)

of a city having 50,000 inhabitants and less than 300,000 is found in section 9898, Revised Statutes 1899, which provides that said district may be attached to the city district when a majority of the voters therein vote to be attached and a majority of the directors of the city district vote to receive said district or the part to be attached.

3. ———: ———: **Separate Corporations.** School districts are separate and distinct corporations from the municipalities in which they are formed. Each district is a body corporate, a separate legal entity, created and governed by law, and its boundaries, privileges and liabilities are measured by law and can be changed only in the way the law prescribes.

4. ———: ———: **New Schoolhouse.** A new schoolhouse erected by a city district within the bounds of an adjacent district, under the erroneous belief that the city district had *ipso facto* been extended over the adjacent district by the extension of the city limits, belongs to the city district, and the adjacent district is in no manner liable therefor.

5. ———: ———: **Recovery of Funds.** Where the city district, in the belief that its boundaries have been legally extended over an adjacent district, uses taxes and other funds collected from the property holders of the adjacent district in providing a school for the adjacent district, in good conscience the adjacent district should not be permitted to recover from the city district the funds so used.

Appeal from Buchanan Circuit Court.—*Hon. A. M. Woodson,* Judge.

REVERSED AND REMANDED.

*Grant Watkins* and *Brown & Dolman* for appellant.

(1) The provisions of sec. 9860, article 2, chapter 154, Revised Statutes 1899, apply only to school districts organized under that article, and do not apply to cities of more than fifty thousand and less than three hundred thousand inhabitants, like Kansas City and St. Joseph, organized under article 3. State ex rel. v. Henderson, 145 Mo. 329. In that case the same laws which are here applicable were involved and consid-

ered, and the case is necessarily decisive of this.    (2) The statute under which it is claimed the limits of the School District of St. Joseph were extended so as to transfer to it the entire school property of the plaintiff, leaving it nothing but its bonded indebtedness, is unconstitutional, being in conflict with section 1, article 4, of the State Constitution, which vests the legislative power of the State in the General Assembly, and with sec. 30, article 2, of the State Constitution, because it takes the property of the plaintiff without due process of law.    The ordinance extending the city limits was passed by the municipal assembly of the city pursuant to the terms of paragraph 43, section 5508, Revised Statutes 1899, which provided that it should "have power within the city, by ordinance, not inconsistent with the Constitution    or    any    law    of    this State  .   .   .   to   extends its limits,  specifying the new line or lines to which the limits shall be extended, and the limits of the city, including the territory brought in."    Had the Legislature power to give the city the right, without the consent of plaintiff district, or any part of its people, to take this school house, for the use and benefit of its own inhabitants?    The power which the legislature may give to a municipal corporation is limited to the "government of persons and things within its limits."    Wells v. City of Weston, 22 Mo. 384.    If the power to create or enlarge a municipal corporation can be delegated, it must be to somebody recognized by the Constitution as capable of receiving such authority, and having local jurisdiction over the territory to be incorporated.    People ex rel. v. Bennett, 29 Mich. 464.    It would be tyrannical to allow a municipal corporation to determine for itself what property should be made tributory to its local  interests.    People   ex rel.   v.   Bennett, supra. Whatever power the Legislature may have to subject private property lying outside the bounds of municipal corporations ought not to be delegated to

those whose interest it is to abuse it.   Wells v. City of
Weston, supra.   We are aware that in Copeland v. St.
Joseph, 126 Mo. 417, it was held by this court that the
statute authorizing cities of the second class to extend
their limits without the consent or even the knowledge
of any of the people affected was valid, but that the
action of the municipality, while attended with every
presumption in its power, was subject to judicial re-
view, and that in Kayser v. Trustees of Bremen, 16
Mo. 88, it decided that the questions involved in such
an act were judicial in their nature.    (3)   A change
in the boundaries of the school district would not
have the effect of divesting the title of the dis-
trict in its schoolhouse situated in the severed
portion.   Whittier v. Sanbom, 38 Mo. 32; North Yar-
mouth v. Skillings, 45 Me. 133; City of Winona v.
School District, 40 Minn. 13; Union Baptist Society v.
Candia, 2 N. H. 20; South Hampton v. Fowler, 52 N. H.
230; Milwaukee v. Milwaukee, 12 Wis. 103; Depere v.
Bellevue Tp., 31 Wis. 120; Board of Health v. East
Saginaw, 45 Mich. 257; Inhabitants, etc., v. Richardson,
23 Pick. 62.

*Thomas J. Porter* for respondent.

(1)   The extension of the limits of the city of St.
Joseph, December, 1899, had the effect to extend the
limits of the school district of St. Joseph to the same
extent, and such extension took effect on the first day of
July following.   R. S. 1899, secs. 9860, 9875, 9876; Lit-
son v. Smith, 68 Mo. App. 397.   (2)   The Legislature
has power to divide the territory or change the bound-
ary lines of public corporations and to apportion the
property and indebtedness; and in the absence of legis-
lation providing for a division of the property and ap-
portionment of the debts, the courts have no authority
over the subject; and each corporation remains liable

for all debts contracted by it, and is entitled to all real estate acquired for public use, falling within its limits as established by the division or change of boundary lines. Commissioners of Sedgwick Co. v. Bunker, 16 Kan. 498; State of Minn. ex rel. v. City and Town of Lake, 25 Minn. 404; Board v. Board, 30 W. V. 424; Bristol v. New Chester, 3 N. H. 524; Larimie Co. v. Albany Co., 92 U. S. 307; Hemstead v. Hemstead, 2 Wend. 134; Wade v. Richmond, 18 Gratt. 583; Prescott v. Town of Lenox, 100 Tenn. 591; School Com. of Indianapolis v. Center Twp., 143 Ind. 391; Mt. Pleasant v. Beckwith, 100 U. S. 514; Brewis v. Duluth, 3 McCrary 219; Washington Co. v. Weld Co. and Logan Co. v. Weld Co., 12 Col. 152; Cooke v. School District, 12 Col. 453; District No. 6 v. District No. 5, 18 Mo. App. 266; State v. Henderson, 145 Mo. 338; Denton v. Jackson, 2 John. Ch. 320; School Tp. of Allen v. School Tp. of Macy, 109 Ind. 559; County of Los Angeles v. County, 97 Cal. 329; Hartford Bridge Co. v. E. Hartford, 16 Conn. 149. (3) While by the extension of the city limits the segregated territory escaped liability for existing debts of plaintiff district, it and residents therein became subject to taxation for the payment of all indebtedness of defendant district. Cash v. Town of Douglassville, 94 Ga. 557; Smith v. City of E. Saginaw, 81 Mich. 123. (4) On the facts disclosed in the record the bonds issued July 31, 1900, by plaintiff district are void and therefore in any view of the case the judgment against the defendant district for $10,000, the amount of the issue, was error. Supervisors v. Marshall Co., 38 Ill. 44; Clark v. Board of Supervisors, 27 Ill. 304; Force Co. v. Board of Supervisors, 61 Ill. 99; State ex rel. v. Green Co., 54 Mo. 540; Heard v. Calhoun School Dist., 45 Mo. App. 660. But if those bonds are valid they furnish no foundation for a judgment in favor of plaintiff against the defendant district. There is no claim of contract between the districts, nor were there any acts of the defendant or its officers which could

have effect to create such a liability. Bates v. Perry, 51 Mo. 453; Blodgett v. Perry, 97 Mo. 273. Public corporations, like individuals, may be estopped by their acts if not *ultra vires* (State ex rel. v. Murphy, 134 Mo. 567), but they are not estopped by the inaction of their officers. Logan County v. City of Lincoln, 81 Ill. 159; 2 Her. Est. and *Res Judicata*, p. 1366, sec. 1222.

GANTT, J.—"The plaintiff school district was organized under the general laws of the State, April 13, 1892, and in addition to its other territory included a tract of land which was platted and known as Saint George. It then purchased a schoolhouse site consisting of five lots in the Saint George plat and received in its own corporate name a deed therefor, issued bonds in the amount of $9,000 payable May 13, 1912, with 6 per cent interest payable semiannually, sold the bonds at par, and immediately expended the entire amount realized in the erection of a schoolhouse on the site so acquired.

"By ordinance approved December 1, 1899, the city of St. Joseph, a city of the second class, containing a population of 103,000, extended its limits over that portion of the plaintiff's school district known as Saint George without any action or consent on the part of any of the people in the territory so included. The three directors of the school district all resided in Saint George.

"Afterwards, acting in good faith upon the theory that the extension of the city limits had in no way affected their school district, the three directors called an election to determine whether the plaintiff district should issue additional bonds to the amount of $10,000 to improve and enlarge the schoolhouse. The election was called and held at the schoolhouse in St. George and seven voters, all residing in St. George, voted for the issue of the bonds and no other votes were cast. There-

upon the proposition was regularly declared carried and the bonds were issued on the 31st day of July, 1900, bearing interest at four and one-half per cent per annum, and were sold at par, and all the proceeds invested by said directors in enlarging and improving the schoolhouse.

"On the 15th day of May, 1901, there was on hand of money of the school district, $2,613.13 interest and sinking fund on account of the $9,000 of bonds, and $267.08 of others moneys applicable to school purposes, amounting in all to $2,880.21. On that day the said directors turned over all this money, together with the schoolhouse and lots and all other property of plaintiff district, to the defendant, and defendant out of this money paid out the $267.08 for school expenses in Saint George, $540.68 for interest on the $9,000 issue of bonds, leaving $2,072.45 of the interest and sinking fund unexpended, which defendant brought into court after this suit was brought and tendered back to plaintiff.

"The assessed valuation in 1889 of the property contained in that part of the plaintiff school district included in Saint George, was $210,020; that included in the remainder of the district was $235,875.

"The testimony tends to show that from thirty to fifty children from that part of the plaintiff school district outside of St. Joseph attended the Saint George school in the fall of 1901 without paying tuition. It also tends to show that some children outside Saint George were refused the privilege of attending.

"The city of St. Joseph was, by special act of the Legislature approved January 4, 1860, organized for school purposes under the name of St. Joseph Board of Public Schools and continued this organization until the act of March 15, 1895 (art. 3, chap. 154, R. S. 1899), when it organized under that act as the School District of St. Joseph and ever since the 15th of May, 1901, has been holding and using the said schoolhouse in Saint George, collecting and receiving school taxes from that

part of the old district known as Saint George, of which it had at the time this suit was instituted received $383.-81, and will continue to do so unless prevented by the judgment of this court, and refuses to surrender any of the property so in its hands or to make any adjustment respecting the relative rights of the parties.

"The schoolhouse and ground are worth at least $20,000 for general purposes, and their fair rental value is $1.200 per year.

"The petition prays an injunction restraining the defendant from interfering with its controlling jurisdiction for school purposes over that part of the district known as Saint George and requiring defendant to surrender to plaintiff the schoolhouse, apparatus, appliances, and moneys in its hands and have an accounting of moneys, taxes and apportionments received, including the use of its schoolhouse and for judgment for the same, and if the court should hold that Saint George is now a part of the defendant school district then for an equitable adjustment of the rights and liabilities of the parties and creditors and for general relief.

"It is admitted that plaintiff ought to have judgment for $2,072.45 for interest and sinking fund appropriated but not expended in the payment of interest, but defendant contests the return of the $267.08 of the money levied for teachers and incidental fund."

On the part of defendant, the answer admits the incorporation of plaintiff as alleged, and alleges that it is a school district organized by virtue of and in pursuance of an act of the General Assembly of this State, approved March 15, 1895; that by virtue of said act it succeeded to all property, rights and privileges of "the St. Joseph Board of Public Schools," created by an act of the General Assembly, approved January 4, 1860, which had conducted the schools in said school district until defendant was organized under the act of 1895; that by virtue of said act last mentioned defendant became subject to the laws of this State relating

to city, town and village schools; the said city of St. Joseph, at that date, and now having a population of more than fifty thousand and less than three hundred thousand inhabitants, defendant became, by virtue of said act, invested with all the rights, powers and privileges conferred and subject to all duties enjoined by art. 3, chap. 154, Revised Statutes 1899; denies that it had full or any knowledge of the election and issue, pursuant thereto, of $10,000 of the bonds of plaintiff mentioned in plaintiff's petition or of the sale of said bonds or the investment of the proceeds thereof in said schoolhouse; denies that it made no claim to said property and insists that by the extension of the city limits of the city of St. Joseph, the limits of defendant school district of said city were likewise extended to the same extent and in like manner; denies that plaintiff was ignorant that such extension affected plaintiff and the inhabitants of said district or that plaintiff honestly believed that it continued to own said schoolhouse and that its limits continued as they were before such extension; denies that defendant wrongfully induced the directors of plaintiff to turn over to defendant said school building and lot and the moneys on hand amounting to $2,835.21, and denies that it has wrongfully converted the same to its own use; denies that defendant has wrongfully collected taxes belonging to plaintiff district to the amount of $545.96 or that said money is now in its possession; denies that the school building and real estate is of the value of $27,000; denies all knowledge or information whether plaintiff district, if shorn of the Saint George district, can not pay its indebtedness or whether plaintiff will not be able to isue bonds to build another school house and will be deprived of all power to carry on a public school for said plaintiff district.

"Further answering defendant states that by the extension of the limits of the city of St. Joseph as stated in plaintiff's petition, the limits of defendant

school district were extended to the same extent, and that such extension took effect on the 1st day of July, 1900; that notwithstanding such extension of the limits of defendant district, so as to include the territory described in plaintiff's petition as Saint George, plaintiff by and through its officers continued to conduct its school in the school building mentioned in plaintiff's petition, levying and collecting taxes, and receiving the apportionments of the public school funds, in like manner and effect as though the boundaries of plaintiff district had not been altered, until on or about the 4th day of May, 1901, at which time, the acting directors of plaintiff and defendant districts, concluding and in good faith believing that the limits of defendant district had been extended as aforesaid, and meaning and intending to discharge their respective duties as such officers, agreed with each other that defendant should carry on the schools in said building for the then current term, as instituted by plaintiff district, adopting its contracts for teachers, janitors and all other purposes, which was accordingly done; and in consideration for which, plaintiff district through its said officers caused to be turned over and paid to defendant all moneys derived from taxation levied by plaintiff district for the purposes of carrying on said schools. That during said term, and ever since defendant district assumed control of said building, all pupils of plaintiff district were and are now admitted to said schools, without charges for tuition; and during all said time the pupils, resident in plaintiff district, have received all the privileges and benefits of the public schools, as fully to all intents and purposes as though said schools were being conducted by plaintiff district; and as though the boundaries thereof had not been changed.

"Defendant further states that at the same time said money was received as aforesaid, the said officers of plaintiff caused to be paid to defendant district the sum of $2,613.03 belonging to the interest and sinking

fund provided by plaintiff to meet the interest and principal of the $9,000 issue of bonds mentioned in plaintiff's petition, it being mutually supposed and believed that defendant could lawfully assume said debt and would accordingly be entitled to said fund; that defendant accordingly paid out of said sum the interest on said bonds, as the same matured June 20 and December 20, 1901; and the money first mentioned was all expended by defendant district, for the purpose of conducting said schools in said building for the benefit of the pupils of plaintiff district as aforesaid.

"An itemized statement of all moneys received and disbursed as aforesaid is hereto attached and marked 'Exhibit A.'

"Defendant states that since coming into possession of said school building, defendant has expended in necessary repairs thereof the sum of $430.42, an itemized account of which is hereto attached marked 'Exhibit B.'

"Defendant further states that since coming into possession of the property as aforesaid it has procured a site, and erected thereon a school building in the territory aforesaid known as Saint George at a cost to defendant of $3,500; which school building is necessary to provide the pupils in said territory convenient school privileges.

"Defendant states that the moneys received by defendant as aforesaid were paid and received under a mistake and misunderstanding as to the respective powers, duties and obligations of plaintiff and defendant districts; that there remains on hand of said sinking and interest fund, after paying the interest as aforesaid, the $2,072.35; which sum defendant now here tenders into court for plaintiff's use.

"Defendant district having received said moneys in good faith and not having disbursed any part thereof for any other purposes than the purposes for which the

same was collected, is entitled in equity to credit for such disbursements.

"Wherefore defendant prays for such orders, judgments and decrees as to the court shall seem just and proper, the premises considered."

The cause was heard in the circuit court and that court decreed that plaintiff have and recover of defendant the $2,072.35 tendered and deposited in court by defendant and also have and recover of defendant $10,000 expended on said schoolhouse and received by defendant, in all $12,072.35, and that the $2,072.35 be turned over to plaintiff and credited on said judgment and that the $9,000 indebtedness represented by the first bonds be left as a charge on plaintiff and that defendant have and retain possession of the real estate and the schoolhouse erected thereon and that plaintiff recover its costs.

From this decree both parties appealed, but for convenience plaintiff is designated as the appellant and defendant as respondent.

At the foundation of this controversy lies the question whether the extension of the city limits of St. Joseph *ipso facto* extended the limits of the school district of said city so as to take from District No. 7 its schoolhouse and school site and deprived it of about one-half of its taxable property.

On the part of defendant it is insisted that such extension did have that effect by virtue of sections 9860, 9875 and 9876, Revised Statutes 1899, and on the other hand plaintiff insists those sections have no application to school districts in cities of this State having a population of more than 50,000 and less than 300,000 inhabitants.

Section 8083, Revised Statutes 1889, was amended in 1895 (Laws 1895, p. 259) by inserting therein the words, "and every extension that has heretofore been made or that hereafter may be made of the limits of any city, town or village, that is now or may be here-

after organized under the laws of this State, shall have the effect to extend the limits of such city, town or village school district to the same extent; and such extension of the limits of any city, town or village school district shall take effect on the first day of July next following the extension of the limits of such city, town or village," and as so amended the section is now 9860 of the Revised Statutes of 1899.

The amendment on its face shows that it was an amendment to article 2, chapter 143, Revised Stautes 1889 of this State. Article 3 of chapter 143, Revised Statutes 1889, consists of thirteen sections from 8100 to 8112, inclusive, which were enacted at the revising session of 1889 (Laws 1889, p. 255), under the title, "An act to amend article 2 of chapter 150 of the Revised Statutes of 1879, by adding fourteen new sections thereto, to be known as sections 7154b, 7154c, 7154d, 7154e, 7154f, 7154g, 7154h, 7154i, 7154k, 7154l, 7154m, 7154n, 7154o, 7154p, relating to schools." The last of these sections was an emergency clause and contains this significant language: "The fact that there is no law governing city school districts having a population of over one hundred thousand and less than three hundred thousand creates an emergency within the meaning of the Constitution, therefore, this act shall take effect and be in force from and after its passage," approved March 2, 1889. At the same session chapter 143 was enacted as a revised bill, as appears from the summary of the revised statutes in which the foregoing thirteen new sections were placed in the Revised Statues of 1889 as article 3 of chapter 143 and entitled, "Organization of School Districts in Cities of over 100,000 and less than 300,000 inhabitants."

Thus the law stood as to school districts in cities of over 100,000 and less than 300,000 inhabitants until 1893. By section 8100, the first section of said article 3, it was provided that, "All cities in this State now having or hereafter attaining a population of over one

hundred thousand and not exceeding three hundred thousand inhabitants, together with the territory which is or may be attached thereto, may be organized into a single school district in the manner prescribed by law for the organization of school districts *and the change of boundary lines,* and when so organized shall be a body corporate and known as 'the school district of — — — ;' and in that name may sue and be sued, and possess the same corporate powers and be governed by the same general laws as other school districts, except as herein provided. And every city which has heretofore organized under any law of this State as a board of education shall hereafter be known and styled 'the school district' of such city, and by such name may sue or be sued, and shall succeed to all property, rights and privileges of such board of education, and shall be liable to all its debts and liabilities; and in addition to the powers hereinbefore given to school districts, shall have power under and pursuant to existing laws to issue renewal funding bonds for such district, to be exchanged for outstanding bonds issued by such board of education, or to be sold 'for the purposes of meeting and paying any matured or maturing bonded indebtedness of said board of education or school district.''

As St. Joseph at that time was not a city of over 100,000 inhabitants said article 3 of the act of 1889 did not apply to it. By an act of March 31, 1893 (Laws 1893, p. 238) this article 3 of chapter 143, Revised Statutes 1889, was expressly repealed and a *new article* 3 enacted in its stead, containing many new and different provisions. Section 1 of the act of 1893, or the new article 3 of chapter 143, is identical in language with the first section of article 2 of chapter 143, or section 8083, Revised Statutes 1889, save and except such verbal changes as were necessary to distinguish the particular class of cities to which the new articles applied.

In 1895 the Legislature amended section 1 of the new article 3 so as to make it apply to cities having a

population of more than 50,000 and less than 300,000 inhabitants.  [Laws 1895, p. 270.]

As already noted, at the same session by an independent act it amended section 8083 of article 2 by providing that an extension of the city limits should extend the school district.  Counsel for the St. Joseph district insists that article 2 of chapter 143, Revised Statutes 1889, is a general law applicable to all city, town and village schools in cities having less than 300,000 inhabitants and that the sections in article 3, Revised Statutes 1889, were enacted as an amendment of article 2, Revised Statutes 1879, and made them a part of said general law.  The first, and in fact the pivotal, question then is, did the amendment of section 8083 by the act of 1895, though general in its terms, have any application to article 3 of chapter 143, Revised Statutes 1889, and did it amend that also?  After a careful review of the legislation on this subject and a comparison of the various acts with each other we have reached the conclusion that it did not, but that the amendment was solely to the laws governing city, town and village districts in cities having less than fifty thousand inhabitants.  It is obvious, we think, that both by the act of 1889 specially enacted for the government of school districts in cities of over 100,000 inhabitants, and the new article enacted in 1893, the Legislature defined and intended to make them a *separate class* of school districts.  In section 7154b, as it appears in the original law of the session of 1889, the Legislature gave such districts all the powers they intended them to have, otherwise they would have simply referred to section one of article 2 of chapter 143, Revised Statutes 1889, and it would have required only a word or two had they intended the amendment of 1895 to apply to the new article to enlarge the amendment so as to make it apply to said new article, neither of which it did.  It is apparent, we think, from a careful comparison of the thirteen new sections constituting article 3 of the revision of

1889 that the Legislature enacted a complete system for the government of school districts in cities of 100,000 and under 300,000 inhabitants.  Its intention is made manifest by its recital in the last section 7154p that *"there is no law governing school districts having a population of over 100,000 and less than 300,000."* Obviously it meant no *general* law and hence it proceeded to make a general law for all such districts then governed by special acts, and, as already said, completely covered the subject.  Thus, it includes the whole subject of the organization and government of the district, the tenure of the directors, the filling of vacancies of directors in the board; it prescribes in detail the duties of all officers, and wherever it is intended that it should be governed by the same rules enacted for the government of school districts falling under article 2, those details are repeated and many others added.  In a word, the Legislature deemed it was dealing with a new subject and created a complete system in itself.  Throughout the two articles 2 and 3 the Legislature has kept the two separate and distinct.  While in section 9875 provision is made for a change of boundary lines of school districts having a less population than fifty thousand and operating under article 2 of chapter 154, and a like provision is made in section 9898, Revised Statutes 1899, as to school districts governed by article 3, it is significant that section 9876 which refers to cases where "by reason of the limits of any city, town or village being extended, a portion of the territory of any school district adjacent thereto has been incorporated in the city, town or village school district, the inhabitants of such remaining parts of districts shall have the right to be annexed to such city, town or village school district," no such corresponding provision is made in article 3 for annexation of the part of such school district which remains outside of such city extension and for its property rights.

This could scarcely have been an accidental omis-

sion, but if it was we are powerless to supply it. We are referred by counsel for the School District of St. Joseph to the decision of the Kansas City Court of Appeals in Litson v. Smith, 68 Mo. App. 397. But in that case the city of Nevada, a city of the third class, with a population not quite 7,500, had extended its limits and taken in outlaying territory of another district, and the point we are now considering, viz.; whether article 2 of chapter 154 applies to cities of 50,000 inhabitants and under 300,000, was not and could not have been considered. But that case is instructive in view of the fact that article 3 of chapter 154, Revised Statutes 1899, makes no provision whatever for the annexation of that part of a district which is not taken in by the extension of the city limits. The language of Judge SMITH is peculiarly applicable to the situation in which District No. 7 will be left if we should sustain defendant's view. After affirming the right of the unannexed adjacent territory to be annexed to the Nevada school district as a matter of right, Judge SMITH says: "The act is an enabling statute, and since it is presumed to have been known to the Legislature that the enactment of the annexation section would have the effect to curtail the territory of a great number of school districts adjacent to cities, towns, and villages, *it evidently was its design not to leave* the inhabitants of the remaining fractional parts of said district thus *helpless and without the right to be annexed, either to the city, town, or village district,* or to one or more of the other outlaying adjacent districts." But if defendant is right this is the condition in which this fractional part of District No. 7 will be left if dismembered as defendant insists it shall be. Each school district in Missouri is a body corporate; a separate legal entity, created and governed by law, and its boundaries, privileges and liabilities are measured by law and they can only be changed by the law of this State, and we have always held their existence as corporations is distinct from the municipalities in which

they are or may be formed. [Waterworks Co. v. School District, 23 Mo. App. 241; School District v. Goodding, 120 Mo. 67; State ex inf. v. Henderson, 145 Mo. 329; District v. District, 94 Mo. 617.]

There being no statute giving the right, that portion of District No. 7 lying outside the corporate limits of St. Joseph would have no right to be annexed to the school district of said city, and thus the very reasons urged by Judge SMITH why in cities having less than fifty thousand inhabitants annexation could be compelled, enforce the view that inasmuch as article 3 does not attempt to change the school district lines by merely extending the city limits, it was not necessary to make provision for compelling the city district to take the whole of the adjacent district which it had dismembered. The only provision in the act of 1893 as amended by the act of 1895 (R. S. 1899) *for changing the boundary lines of a* school district adjoining a city district of a city having fifty thousand inhabitants and less than three hundred thousand inhabitants is found in section 9898, and that section provides that said district can be attached when a majority of the said adjacent district vote to be attached and a majority of the directors of said city district vote to receive said district, and provision is expressly made that in case "an entire district is thus annexed, all property and money on hand thereto belonging shall immediately pass into the possession of the board of said city district; but should only a part of the district be annexed thereto, said part shall relinquish all claim and title to any part of the school property and money on hand belonging to said original district, and that portion of the district remaining must contain within its limits thirty children and thirty thousand dollars assessed valuation, or thirty children and nine square miles of territory."

We have thus considered all the sections which defendant relies on to sustain its contention that the extension of the city limits of St. Joseph *ipso facto* ex-

tended its school district lines and took in the Saint George district by operation of law. We have done so because counsel insist that our decision in State ex inf. Lowe v. Henderson, 145 Mo. 329, does not control this case. That case arose February 11, 1898, and long after the amendment of 1895 to the act of 1893, and involved the right of the school district of Kansas City, a city school district organized under article 3 as amended by the act of 1893, to the property of the Westport school district. The Kansas City district asserted that by reason of the annexation of the city or town of Westport to Kansas City the school district of Westport became dissolved and all of its property belonged to the school district of Kansas City and the suit was a *quo warranto* to oust the directors of the Westport district from further assuming to act as directors of said Westport district. It was unanimously held by this court that the extension of the corporate limits of Kansas City over the corporate limits of and to include Westport did not extinguish the school district of Westport and did not annex the school district of Westport to that of Kansas City; that each legally organized school district is an independent body corporate under the laws of this State, and is not a subordinate department of the city government in which it is organized, but independent thereof. Counsel are mistaken in saying that no reference was made to the act of 1893. It was specially pleaded by the prosecuting attorney, and the counsel for defendant urged upon this court that section 17 of the act of 1893 (now sec. 9898, R. S. 1899) was the only authority for changing the boundaries of the school districts of Kansas City and Westport. It was not insisted that section 9860 authorized such absorption by the Kansas City school district of the Westport district because the very able counsel for the Kansas City district conceded it had no application to city school districts organized as Kansas City was under article 3 of chapter 154, Revised Stautes 1899, or the act of 1893. We hold

now, as we did then, that the mere extension of the city limits of such a city does not extend the school district of the city over the annexed territory, but if annexed, it must be by virtue of the only law the Legislature has provided in such cases, to-wit, section 9898, Revised Statutes 1899.

It follows then that the directors of plaintiff had no authority to turn over the schoolhouse of plaintiff and its school site to defendant; that they did so in good faith we have no doubt whatever. The schoolhouse and site and appurtenances still belong to plaintiff and it is liable for all the bonded debt created by it, amounting to $19,000, and is entitled to have refunded to it the moneys turned over to plaintiff by its board of directors, to-wit, $2,613.03, belonging to the interest and sinking fund provided to meet the interest and principal on the $9,000 issue of bonds, less the two semiannual payments of interest paid by defendant out of said funds, amounting to $540.68, being $2,072.35 tendered by defendant and adjudged to plaintiff by the circuit court.

It follows that the defendant is not liable for the $10,000 of bonds issued by plaintiff and the court erred in awarding plaintiff a judgment for that amount against defendant. It appears that the clerk of the plaintiff district turned over to defendants $276.18, the amount on hand belonging to the incidental, teachers and building fund, and that the county treasurer from time to time in 1901 also paid to defendant moneys received on delinquent taxes due plaintiff to the amount of $509.29, and out of this money the defendant continued the school and the children of the plaintiff district continued to go to the school and defendant paid the teachers, janitors and for fuel and supplies and supplemented the amount thus received by it with $125.48 to balance the account of $776.47. Under the evidence we think that as these moneys were expended for the public purpose for which they were collected, although disbursed

by defendant, in equity and good conscience, plaintiff has no claim against defendant on that account.

As to the new school building erected by defendant at a cost of $3,500, it must be held that plaintiff is in no manner liable therefor, but the same belongs to and is the property of defendant.

The judgment of the circuit court is reversed and the cause remanded for further proceedings in accordance with the views herein expressed.

All concur.