## SALT LAKE CITY v. BOARD OF EDUCATION OF SALT LAKE CITY, et al.

### No. 3269.   Decided Oct. 9, 1918.   (175 Pac. 654.)

1. MUNICIPAL CORPORATIONS—BUILDING REGULATIONS—SCHOOL BUILD-INGS—POWER OF CITY.  Comp. Laws 1907, section 206, subds. 55, 56, do not give to cities the power to regulate the construction of public school buildings, in view of sections 1892-1961, placing control of public schools of cities of first and second class in boards of education of such cities, section 1962 as to compulsory attendance, and Const. art. 10, as to control of public school system being vested in Legislature.  (Page 542.)

2. MUNICIPAL CORPORATIONS — POLICE POWER — CONSTRUCTION OF SCHOOL BUILDINGS—REGULATION BY CITY.  The mere fact that no police powers are vested in boards of education is not decisive of the question whether the state has by Comp. Laws 1907, section 206, surrendered to cities police power over public school buildings.  (Page 547.)

3. MUNICIPAL CORPORATIONS—CONSTRUCTION OF SCHOOL BUILDINGS— "PUBLIC BUILDINGS"—"ALL BUILDINGS."  School buildings are not included within designation "public buildings" or "all buildings" mentioned in Comp. Laws 1907, section 206, subds. 55, 56, as to power of city commission to require buildings to be constructed of fire-proof material, etc.   (Page 547.)

4. MUNICIPAL CORPORATIONS—POLICE POWER IN GENERAL.  Police power conferred on cities should be construed and applied so as to meet the dangers incident to and arising out of the subject-matter covered.  (Page 549.)

5. EVIDENCE—JUDICIAL NOTICE—MATTERS OF COMMON KNOWLEDGE.  The Supreme Court is required to take judicial notice of all matters which are known to all the inhabitants of the cities of the state.  (Page 549.)

6. EVIDENCE—COMMON KNOWLEDGE—LOCATION OF SCHOOL BUILDINGS.  Every one knows that public school buildings of the state are not located in the business districts of cities or in the most densely populated portions.  (Page 549.)

7. EVIDENCE—COMMON KNOWLEDGE—LOCATION OF SCHOOL BUILDINGS.  It is known by all that public school buildings in cities of the state are constructed on sites which are usually more extensive than the ground plans, and that all school buildings are segregated or detached from all other private or public buildings.  (Page 549.)

8. EVIDENCE—COMMON KNOWLEDGE—LOCATION OF SCHOOL BUILDINGS.
   It is known to every one that the school population in the cities of
   the state is numerically greater in each succeeding year, and that
   such growth generally extends over entire resident portions, and
   while in many instances too large to be accommodated in existing
   school buildings is nevertheless too small from year to year to
   justify erection of school buildings such as would be necessary for
   permanent use.   (Page 550.)

9. SCHOOLS AND SCHOOL DISTRICTS—CONTROL OF SCHOOL BUILDINGS—
   INTENT OF LEGISLATURE. It must be assumed, in view of Laws
   1915, c. 100, by which Comp. Laws 1907, Section 206, was com-
   pletely rewritten and re-enacted, that Legislature did not intend to
   confer unnecessary powers on city authorities respecting control of
   public school buildings and did not intend to hamper school boards
   in control of such buildings.  (Page 551.)

10. STATUTES—CONSTRUCTION—PARI MATERIA.  It must be assumed
    that it was intended that all the laws which affect the public schools
    and school buildings of the state are to be considered as pari materia
    and so construed and applied.  (Page 551.)

11. MUNICIPAL CORPORATIONS—FIRE ORDNANCE—VALIDITY.  Ordinance
    of Salt Lake City, Section 435, requiring the placing of fire alarms
    or telephones in all school buildings, is valid.  (Page 553.)

Appeal from the District Court of Salt Lake County, Third
District; *Hon. P. C. Evans,* Judge.

Action by Salt Lake City against the Board of Education
of Salt Lake City, and John E. Anderson and another, a co-
partnership.

Judgment for plaintiff.  Defendants appeal.

REVERSED and remanded.

*Cheney, Jensen & Holman* for appellants.

*W. H. Folland,* City Atty., and *H. H. Smith* and *W. W.
Little,* Asst. City Attys. for respondent.

FRICK, C. J.

Salt Lake City, a city of the first class, hereinafter called respondent, commenced this action in the district court of Salt Lake County to enjoin the board of education of Salt Lake City, John Anderson, and Charles L. Carlen, hereinafter styled appellants, ''from proceedings further in the construction'' of a certain school building until the ordinances hereinafter referred to shall have been complied with.

The respondent in its complaint, after alleging the necessary matters of inducement, and after setting forth those portions of the city ordinances which it was alleged were being violated by the appellants, sets forth its cause of action in the following words:

''That on or about the 1st day of June, 1913, the defendant board of education of Salt Lake City made and entered into a contract with the said John E. Anderson and Charles L. Carlen for the erection of a three-story nine-room annex to the Sumner school building in Salt Lake City, Utah, and as plaintiff is informed and believes, and therefore alleges, said contract was made in disregard of the said building code of Salt Lake City, and was made by said board of education with full knowledge that the specifications for said annex to said school building were not in conformity with said building code, and particularly with sections 275 and 280 thereof, which sections were thereafter violated by said board of education, its officers and agents, in proceeding with the erection of said three-story annex to said Sumner school of Class C, or nonfireproof material, instead of Class A or Class B, or fireproof construction, as required by said sections, which are hereto attached, marked Exhibits A and B, and made a part of this complaint.

''That notwithstanding the provisions of section 258 of said ordinance requiring the taking out of a permit from the building inspector of Salt Lake City, neither said board of education nor said contractors have secured a permit for the construction of said school building, as required by said ordinances, but have proceeded with and are now engaged in

the construction of said nonfireproof building, and will continue and complete the construction of said building under said contract unless restrained by this court, without taking out a permit as required by said section, which section is as follows:

" 'Sec. 258. *Permits.*—No work except minor repairs shall be done upon any structure, building or shed in the city of Salt Lake without a permit from the inspector of buildings.'

"That plaintiff believes, and therefore alleges, that the failure of said contractors to secure said permit is due to the refusal of the said board of education to recognize the power of said plaintiff to make and enforce said building regulations, and the claim by said board that such building regulations are inapplicable to said school building or to any school building erected under the authority of said board.

"That notwithstanding the provisions of section 435 of said ordinance requiring the placing of fire alarms or telephones in all school buildings in Salt Lake City, the said board of education has made no provision for the placing of a fire alarm or telephone either in said annex or in the existing Sumner school building in compliance with said ordinance, but has refused to do so, and as plaintiff is informed and believes, and therefore alleges, said board of education will continue to refuse to comply with said ordinance unless required to do so by an order of court. Said section 435 is hereunto attached, marked Exhibit C, and made a part of this complaint."

The appellant interposed a general demurrer to the complaint which was overruled. They elected to stand upon their demurrer, and judgment was duly entered enjoining them—

"from proceeding further in the construction of the three-story annex to the Sumner school building in Salt Lake City, Utah, until the said defendants, their employees, servants, and agents, have complied with the ordinance of Salt Lake City in respect to requiring the securing of a permit for the construction of said building from the building inspector of Salt Lake City, and requiring the installation of fire alarms

544          SUPREME COURT OF UTAH.          [Oct.

Salt Lake City v. Bd. of Education of Salt Lake City, et al., 52 Utah 540.

or telephones in said school building, and requiring the construction of said building of fireproof material in compliance with the ordinances of said city, or until the further order of this court.''

To reverse the judgment appellants prosecute this appeal and insist that the court erred in overruling the demurrer.

The ordinances referred to classify the buildings and prescribe the character of the material that shall be used in the construction of each class, and also provide how the building shall be constructed with respect to entrances and exits, etc. In short, the ordinances constitute a complete building code.

The ordinances in question here are based on Comp. Laws 1907, section 206, and more particularly on subdivisions 55 and 56 of that section. Subdivision 55 provides that the city commission shall have power—

''to define the fire limits, and prescribe limits within which no building shall be constructed except of brick, stone, or other incombustible material, without permission, and to cause the destruction or removal of any building constructed or repaired in violation of any ordinance, and to cause all buildings and inclosures which may be in a dangerous state to be put in a safe condition or removed.''

Subdivision 56 provides that the city commission shall have power—

''to prescribe the manner of constructing stone, brick, and other buildings, and the construction of fire escapes; and to cause all buildings used for public purposes to be provided with sufficient and ample means of exit and entrance, and to be supplied with necessary and appropriate appliances for the extinguishment of fire, to prevent the overcrowding thereof, and to regulate the placing and use of seats, chairs, benches, scenery, curtains, blinds, screens, or other appliances therein.''

The ordinance respecting fire limits, which is referred to in the complaint, among other things, provides:

''There shall be a fire alarm or telephone directly connected with the fire department in all theatres, moving picture buildings, school-houses,'' etc.

The contention of appellants' counsel can perhaps be best stated in their own language as contained in their printed brief. They say:

"The question for decision is as to whether the plaintiff city, acting in pursuance of the police powers conferred upon it by general law, may impose building restrictions or regulations upon the defendant board of education in the erection of school buildings. The reasonableness of such regulations is not questioned, but the defendants contend that the school board is exempt, inasmuch as it is created by an act of the Legislature as an independent board, whose powers are co-ordinate with those of the city commission. It is not contended that the defendant school board has any measure whatsoever of police power, but, on the other hand, that the police power extending over school property still resides in the state, and that the general grant of police powers to the plaintiff does not extend to school buildings, but only to private property. It is likewise conceded that there is no express provision of the statute exempting the defendant board from the police power granted to the city, but that it is to be gathered from the general statutes of the state conferring certain police powers upon that board."

Upon the other hand, counsel for respondent contend that by the several statutory provisions we have quoted plenary power is conferred on cities with respect to regulating the construction of all public buildings within those limits, which includes all school buildings. In support of their contention counsel cite and rely on the case of *Pasadena School District v. City of Pasadena,* 166 Cal. 7, 134 Pac. 985, 47 L. R. A. (N. S.) 892, Ann. Cas. 1915B, 1039.

While at first blush the case from California seems to sustain respondent's contention, yet, after a careful examination and consideration of the constitutional and statutory provisions of this state, we are constrained to hold that there is a substantial difference between the statutes of California on which that decision is based and those of this state. We entertain the highest respect for the decisions of the Supreme Court of California, and where a question has been squarely

decided by that court we would hesitate long before refusing to follow that decision. But where, as in this case, there is a substantial difference between our statutes and those of California we must assume the responsibility of determining the result for ourselves. For the reasons hereinafter appearing we are firmly of the opinion that the Legislature of this state did not cede to the cities of this state the power to regulate the construction of the public school buildings as claimed by respondent.

Article 10 of our Constitution, entitled "Education," provides that the control of the public school system, which includes all schools of whatever kind or grade, is vested in the Legislature. Comp Laws 1907, sections 1892-1961, place the control of the public schools in cities of the first and of the second class in the boards of education of such cities. Section 1913 of that compilation, among other things, provides:

"The board of education shall have the power and authority to purchase or sell schoolhouse sites and improvements thereof; to construct and erect school buildings and to furnish the same; to establish, locate, and maintain kindergarten schools, common schools, consisting of primary and grammar grades, high schools, and industrial or manual training schools; to establish and support school libraries; to purchase, exchange, repair, and improve the high school apparatus, books, furniture, fixtures, and all other school supplies in said schools.

"It shall * * * have the power to * * * do all things needful for the maintenance, prosperity, and success of the schools, and the promotion of education."

Section 1962 provides for compulsory attendance at the public schools, both in country districts and in cities. There are also limitations imposed on school boards by which taxes to provide funds for buildings and for all other purposes cannot exceed the amounts specified for any tax year. There are also other statutory provisions whereby certain powers are conferred on the boards of health respecting the regulation of health, etc., of public schools. If, therefore, all of the foregoing provisions, as well as some that are merely inci-

dental thereto and to which we shall not specially refer, are kept in mind, one naturally arrives at the conclusion that the entire control of the public school system, including the construction and maintenance of school buildings, in cities of the first and of the second class, is conferred on the boards of education without the power of interference on the part of such cities.

Respondent's counsel, however, contend that the power of police regulation is exclusively vested in the cities and that the boards of education possess no such power. Counsel further direct our attention to the fact that the decision in the California case to which we have referred is based upon that fact.

While, as before stated, we entertain the highest respect for the decisions of the Supreme Court of California, yet when, as here, there is substantial difference between our statutes and those of that state, we may not escape responsibility by merely following the decisions of that court.

Nor is the mere fact that no police powers are vested in the boards of education decisive of the question of whether the state has in fact surrendered to the cities plenary police power over our public school buildings.

Counsel for respondent insist that such power is clearly conferred in the several subdivisions of section 206, which we have quoted. A careful reading and consideration, however, of the provisions contained in subdivisions 55 and 56, supra, in our judgment clearly shows that it was not the intention of the Legislature to make those provisions applicable to public school buildings. In subdivision 56 it is provided that, in addition to the other powers that cities have over public buildings, they also have the power "to prevent the overcrowding thereof, and to regulate the placing and use of seats, chairs, benches, scenery, curtains, blinds, screens, or other appliances therein." It will be observed that school buildings are not specifically mentioned in any of the subdivisions of section 206, supra. If, therefore, school buildings are included, they must come

within the designation of "public buildings," or of "all buildings," mentioned in said subdivisions.

Counsel for respondent contend that all of the common school buildings within cities are necessarily included within those terms. Whether such is the case or not is, however, in view of all that is contained in our Constitution and statutes concerning our public school system, a matter of construction. As before stated, the control of our public school system remains with the Legislature, except where such control is expressly or by necessary implication conferred on some other power. The law with respect to where the control of public schools in this country is lodged is very clearly and correctly stated in 19 R. C. L. p. 765, section 71, in the following words:

"Essentially and intrinsically the schools in which are educated and trained the children who are to become the rulers of the commonwealth are matters of state, and not of local, jurisdiction. In such matters the state is a unit and the Legislature the source of power. The authority over schools and school affairs is not necessarily a distributive one to be exercised by local instrumentalities, but, on the contrary, it is a central power residing in the Legislature of the state. It is for the lawmaking power to determine whether the authority shall be exercised by a state board of education, or distributed to county, township, or city organizations throughout the state."

In referring to the principle on which the police power in cities is based respecting the regulation of buildings, etc., Mr. Freund, in his excellent work on Police Power, in sections 140, 141, states the law thus:

"The principle of delegation seems to be to make the municipal police power coextensive with local dangers arising from the close aggregation and contact of persons and property in a limited space or territory. This principle of delegation may be fitly recognized as a principle of construction of charter powers, which should, if consistent with their wording, be given an effect adequate to meet local dangers by appropriate and customary measures of restraint or requirement."

In connection with the principles just quoted, another one must not be overlooked which is admirably expressed by the Court of Appeals of Kentucky in the case of *Kentucky Institution for Education of Blind v. City of Louisville*, 123 Ky.

767, 97 S. W. 402, 8 L. R. A. (N. S.) 533, in the following words:

"The principle is that the state, when creating municipal governments, does not cede to them any control of the state's property situated within them, nor over any property which the state has authorized another body or power to control."

Recurring now to the language which we have quoted from section 206, it must, on only slight reflection, become apparent to every one that the sweeping language relating to the overcrowding scenery, curtains, blinds, screens, and other appliances was not, and could not have been, intended to apply to the public school buildings. To do so would make the statute wholly inapplicable and unreasonable. Moreover, such a construction would result in practically robbing the boards of education in cities of the control of such buildings. The statute, therefore, cannot be given a literal construction and application. At all events it would, in a large measure if not entirely, confer the power of control upon the city authorities. To do that was manifestly not the intention of the Legislature. If, therefore, we apply the doctrine announced by the Court of Appeals of Kentucky, to which we have referred, we are forced to the conclusion that the Legislature did not intend to cede the control over public schools to the city authorities, but intended to, and did, confer that power upon the boards of education of such cities.

Again: As we have seen from the excerpt quoted from Freund on Police Power, supra, the police power conferred on cities should be construed and applied so as to meet the dangers incident to, and arising out of, the subject-matter covered by the police power.

We are also required to take judicial notice of all matters which are known to all the inhabitants of our cities. Every one knows that our public school buildings are not located in the business districts of the cities nor yet in the most densely populated portions. By that we mean in those portions where the buildings are constructed in close proximity to one another. Moreover, it is known by all that the public school buildings in our cities are con-

structed on school sites which are usually much more extensive than the ground plans of the buildings, and hence that all school buildings are segregated or detached from all other private or public buildings precisely as dwellings are detached in the residential districts. In view of that, the necessity for stringent regulation is wholly lacking. In construing the police power conferred on cities respecting public buildings it is not at all necessary, therefore, to so construe the language as to include our public school buildings within the terms "public buildings" or "all buildings," any more than it would be to include all residences.

There are, however, still other cogent reasons why our public school buildings should be excluded from the control of the city authorities except as hereinafter stated.

We have already called attention to the fact that upon the one hand the boards of education are restricted by the statute in providing funds for school buildings as well as for other school purposes. In other words, the amounts that such boards may provide by taxation are strictly limited. Upon the other hand, those boards are required to provide adequate school room and school facilities to carry into effect our statute respecting compulsory school attendance. These requirements, in many instances, could not be met if the cities should be permitted to enforce the ordinances which are sought to be enforced in this proceeding, and which the district court has enforced. Here, again, we cannot overlook facts known to all. For example:

It is known to every one that the school population in our cities is numerically greater in each succeeding year; that such growth generally extends over the entire residence portions of the cities; that such growth, while in many instances too large to be accommodated in the existing school buildings, is, nevertheless, too small from year to year to justify the erection of such school buildings as would be necessary for permanent use, even if the necessary funds were available or could be provided by taxation from year to year, which, under the limitations before referred to, cannot legally be done. The boards of education are there-

fore often compelled to provide temporary school buildings in which to educate a portion of the school children until such time as permanent buildings can be constructed. The temporary structures, in the nature of things, cannot be made to conform to the strict regulations of the city ordinances respecting buildings. Nor is it always possible to conform to all of the requirements of those ordinances even in erecting permanent school buildings.

All these facts are as well known to the legislators of this state as they are known to all others, and hence we must assume that in framing the school laws, in fixing the limitations respecting taxation, in conferring powers on city authorities as well as on the boards of education in cities, the Legislature had all of these matters in mind, and hence did not intend to confer unnecessary powers on the city authorities respecting the control of public school buildings, and did not intend to hamper the school boards in the control of such buildings. We have a right to assume these things because the Legislature in 1915 (chapter 100, Laws Utah 1915, p. 156) completely rewrote and re-enacted section 206, in which section, as we have seen, the police powers conferred on cities are contained.

Moreover, we must assume that it was intended that all the laws which affect our public schools and school buildings must be considered as in pari materia and must be so construed and applied. Further, the fact that the law provides for nonpartisan boards of education; that the members usually are men of experience and are first-class citizens, and thus are not only well qualified to provide for the construction of proper school buildings, but are also competent to safeguard the welfare of the school children as well as that of the public—all convinces the disinterested mind that it was not intended to have a divided control of our public school buildings. Then again, so far as the sanitary regulations are concerned, the boards of health are clothed with ample power over our schools without any interference from the cities.

It is, however, earnestly insisted by counsel for respondent that such a construction robs the cities of all power over school buildings, and permits those boards to construct buildings of any kind of material in any part of the city, and that such boards may thus make school buildings a menace and a source of danger to other buildings and structures in such cities. We have already pointed out, however, that school buildings are constructed on school sites which are of considerable size, and that all school buildings are necessarily detached or segregated from all other buildings and structures. In view of that, the danger which is sought to be met or obviated by the ordinances regulating the construction of buildings in cities does not apply to those buildings any more than to detached residences. If, however, a school board should attempt to construct a school building of improper, unsafe, or inflammable material, or so near to another building, public or private, as to make the school building a menace or a danger to such other buildings, either the city or the owner of the building thus menaced or endangered, or any interested person, would have a speedy and adequate remedy in a court of equity to have the school building declared a nuisance and have it made safe or removed. It will be observed, however, that in this case there is neither a direct nor an indirect allegation that the school building in question is a menace or a danger to any one, nor that it is not entirely detached from all public or private buildings except the school building of which it forms a part. Indeed, both sides concede that this action is not predicated upon any such theory. There are therefore no allegations contained in this case by which the powers of a court of equity can be invoked, provided we have correctly construed and applied the statutes relating to school buildings. In this connection it is perhaps but just and fair to counsel for respondent to state that they concede that the ordinances of respondent would have no application to what they call state buildings, although such buildings are located within the limits of the city. This concession is made in deference to the principle quoted from the Kentucky case to which we have referred. Under our

Constitution and statutes, however, we can conceive of no distinction between what are denominated by counsel state buildings, such as the buildings of the State University, or the Capitol, and our school buildings. True, the control of the university is placed in the hands of a board of regents whose duties and powers are perhaps defined with more particularity and detail than are the powers of the boards of education. That may perhaps also be true respecting the State Capitol. Be that as it may, however, the public school buildings and their control are of as much concern to the state as are the other buildings, and a careful reading of the constitutional provisions and statutes relating to education clearly shows that the entire public school system (which includes the common schools as well as the university and the other state schools) remains entirely within the control of the state Legislature, and hence within the control of the state, except where certain powers are delegated to the several boards of education as herein indicated. If it be conceded, therefore, as it is and must be, that the state has not surrendered the control over its buildings to the cities, then it necessarily follows that the terms "public buildings" and "all buildings" used in the subdivisions of section 206, supra, which we have quoted, do not embrace all buildings within the cities. Moreover, if state buildings must be excluded, then public school buildings must likewise be excluded from those terms.

From a consideration of all of the various provisions relating to our public schools, therefore, we are forced to the conclusion that it was not intended to invest cities with any power over school buildings except in case such buildings should become a menace and a danger as before stated, and that school boards are not required to obtain permits from the cities as contended for by respondent's counsel.

There is, however, another question presented, namely, the one relating to the connection of school buildings with the fire department by telephone or otherwise in accordance with the ordinance which we have referred to. In our judgment that is a valid regulation, and is one which the

board of education should comply with. The ordinance is, however, intended to apply when the school building is completed and not while in process of construction. We cannot conceive any reason why the erection of any school building should be arrested or enjoined because that ordinance is not complied with. If, after the building in question is completed and is ready for use, the board of education shall still refuse to connect the same with the fire department of the city, as provided by the ordinance, the district court, upon a proper application being made, may then compel obedience to the ordinance on the part of the board of education. That, as we read the ordinance, need, however, not be done until the school building is completed.

For the reasons stated the judgment is reversed and the case is remanded to the district court of Salt Lake County, with directions to sustain the demurrer and to dismiss the action; appellants to recover costs.

McCARTY, CORFMAN, THURMAN, and GIDEON, JJ., concur.