HARTFORD UNION HIGH SCHOOL, Respondent, v. CITY OF
HARTFORD, Appellant.

*No. 117. Argued May 4, 1971.—Decided June 25, 1971.*
(Also reported in 187 N. W. 2d 849.)

For the appellant there was a brief and oral argument by *Robert J. Russell,* city attorney.

For the respondent there was a brief by *Smith & Sarafiny* of Hartford, and oral argument by *George E. Smith.*

A brief amicus curiae was filed by *Ela, Christianson, Esch, Hart & Clark* and *James F. Clark* and *David S. Uphoff,* all of Madison, for the Wisconsin Association of School Boards, Inc.

A brief amicus curiae was filed by *Jerry A. Edgar* and *Jean G. Setterholm,* both of Madison, for the League of Wisconsin Municipalities.

HALLOWS, C. J.   In many of the cases in other jurisdictions the courts have decided this ever-recurring conflict between school districts and municipalities solely on the basis of whether education in that jurisdiction was a state function and if so, sovereign immunity completely protected the school district from municipal building regulations.   The more modern approach to the problem admits the building of public schools is a part of education and may be a state function but recognizes immunity of the school district, not because of sovereignty but because the state has affirmatively acted in such a comprehensive manner as to pre-empt the area and thus exclude any application of police power by a municipality whether under home rule or otherwise. *Hall v. Taft* (1956), 47 Cal. 2d 177, 302 Pac. 2d 574; *Cedar Rapids Community School Dist. v. Cedar Rapids* (1960), 252 Iowa 205, 106 N. W. 2d 655; *Edmonds School Dist. v. Mountlake Terrace* (1970), 77 Wash. 2d 609, 465 Pac. 2d 177.

There is no question in Wisconsin that education constitutes a state function.   Art. X, sec. 3, of the Wisconsin Constitution makes public education a concern of the state,[1] and the actual operation of public schools to maintain the state objective is considered a state

---

[1] "District schools; tuition; sectarian instruction. SECTION 3. The legislature shall provide by law for the establishment of district schools, which shall be as nearly uniform as practicable; and such schools shall be free and without charge for tuition to all children between the ages of four and twenty years; and no sectarian instruction shall be allowed therein."

function. *Van Gilder v. Madison* (1936), 222 Wis. 58, 88, 267 N. W. 25, 268 N. W. 108; *State ex rel. Warren v. Reuter* (1969), 44 Wis. 2d 201, 222, 170 N. W. 2d 790. While the city maintains the construction of a school building, or an addition thereto, is not education and therefore not a state function, we think a broad view of education must be taken and the construction of schools is included in the state's concern.

The responsibility for the construction of schools is generally delegated to school districts with varying degrees of authority. Prior cases in Wisconsin may well support the school's argument of immunity from the city's building code based upon sovereign immunity. In *Milwaukee v. McGregor* (1909), 140 Wis. 35, 37, 121 N. W. 642, this court recognized the doctrine of sovereign immunity as being superior to a city's attempt to enforce its building code on the construction of a state public school in Milwaukee. The same principle prevailed in *Green County v. Monroe* (1958), 3 Wis. 2d 196, 202, 87 N. W. 2d 827, when the court took the view the general statute conferring zoning powers upon the city did not include applicability to the county "when in conflict with special statutes governing the location and construction of a county jail."

This historic approach to the issue is an either/or proposition and the landmark case for the view is *Kentucky Institution for Blind v. Louisville* (1906), 123 Ky. 767, 97 S. W. 402, and the more recent case of *Board of Regents of Universities, etc. v. Tempe* (1960), 88 Ariz. 299, 356 Pac. 2d 399. These cases rest upon the rationale that a state agency to which is delegated by law the responsibility of performing a governmental function is not subject to the general police powers of a municipal corporation.

The leading cases holding police power regulations applicable to the construction of a public school are *Kansas City v. Fee* (1913), 174 Mo. App. 501, 160 S. W.

537, and *Pasadena School Dist. v. Pasadena* (1913), 166 Cal. 7, 134 Pac. 985. Although the latter case has been overruled by *Hall v. Taft, supra,* the position has survived in *Kansas City v. School Dist. of Kansas City* (Mo. 1947), 201 S. W. 2d 930, and *Port Arthur Independent School Dist. v. Groves* (Texas 1964), 376 S. W. 2d 330.

In *Hall v. Taft, supra,* and in *Edmonds School Dist. v. Mountlake Terrace, supra,* the mechanistic approach of classification into sovereign immunity or police power is avoided and the court gives more consideration to an analysis of whether the state has in fact pre-empted the field by legislation or regulations. In *Hall* the court considered that the education code enacted by the California legislature completely occupied and pre-empted the field of public school construction and thus excluded local regulation under the police power. In *Edmonds* the court considered the delegation of power to regulate the construction of school buildings to be inadequate to pre-empt the city from enforcing its building code. Under the pre-emption approach, consideration must be given to the nature of the educational mandate, the structure of the governmental arm empowered to carry out the mandate, the specific legislation delegating the responsibility for school construction to the state agency, and the nature and comprehensiveness of the legislation regulating the construction of public school buildings.

In three cases holding the field of school construction was not fully occupied by state legislation or delegation of control the courts have stressed the relative completeness of the California education code compared with the control in the cases before them. In *Cedar Rapids Community School Dist. v. Cedar Rapids* (1960), 252 Iowa 205, 106 N. W. 2d 655, 659, the court noted that neither the Iowa constitution nor legislature made provision for a complete system for the construction of school

buildings or for the delegation to a state department of education to establish standards for school buildings. Consequently, the court held the city under its police power could adopt a building code which was applicable to school construction. The court in *Corder v. Milford* (Del. 1963), 196 Atl. 2d 406, took a similar view noting that although the Delaware state board of education had been delegated the power to adopt rules and regulations governing "protective construction of school buildings," the board had not adopted a detailed building code for school construction. In *Edmonds School Dist. v. Mountlake Terrace, supra,* the pertinent legislation only required school districts to have their plans and specifications for the construction of schools approved by the county superintendent of schools. The court thought such requirement was not enough to pre-empt the field of building standards.

On the other side of the coin, we find *Board of Education v. West Chicago* (1965), 55 Ill. App. 2d 401, 205 N. E. 2d 63, which found the Illinois legislature had specifically delegated the responsibility for school construction to various state and school and nonschool officials, thereby pre-empting the field and rendering the municipality's building code inapplicable. The school plans and specifications were required to be submitted to the superintendent of public instruction and to the state fire marshal for approval. The superintendent was also responsible for the preparation of specifications for the minimum requirements for heating, ventilation, lighting, seating, water-supply, toilet and fire safety. With the view that these were specific statutory regulations, the court found they were controlling over a municipality's general delegation of police power and fully pre-empted the field.

Wisconsin's legislation on the subject is not as comprehensive as the California school building code, although it is probably more comprehensive than that of Illinois.

By sec. 121.02 (2) (c), Stats., the superintendent of schools is authorized to establish standards providing for healthful, safe school facilities. The city claims no such standards have been inaugurated and the record is silent on the point. While school districts have been delegated authority over site selection and the management of school property by secs. 120.10 (5) and 120.12, this delegation is hardly a pre-emption in the area of school construction.

The most specific legislation in the area is the state building code for public buildings promulgated by the industrial commission pursuant to the powers granted it in chapter 101, Stats. In sec. 101.101 it is provided that the department of industry, labor and human relations (ILHR) shall require the submission of essential drawings, calculations, and specifications for public buildings and that the plans for such buildings shall be examined for compliance with the rules of the department. But this legislation does not purport to be exclusive. In sub. (4) of sec. 101.101, it is provided that the department shall accept the examination of the drawings, calculations, and specifications performed by cities of the first class if such examination is made in the manner approved by the department and that it shall also accept such examinations for buildings containing less than 50,000 cubic feet of volume and alterations to buildings containing less than 100,000 cubic feet of volume performed by cities of the second and third class if plans are examined in the manner approved by the department. The competency of such municipal examiners is determined and certified by the department.

In sec. 101.101 (4) (g) and (h), Stats., the department is required to accept the inspection of the buildings by qualified and authorized inspectors in the employ of the cities of the first, second, and third classes for the inspection of buildings within the corporate limits of such cities and may require all local officers not authorized by

the department to grant approvals after examination of the drawings to deny permits for the construction of public buildings until such drawings have been examined by the department.

Under authority delegated to it, the department of industry, labor and human relations has promulgated the Wisconsin Administrative Code and in Vol. 4, chapters IND 50 through 57 relate to the state building code. The purpose of the code is to promote the health, safety and welfare of the public by establishing performance minimums contained therein for design, construction, alteration, use and occupancy of the buildings and parts thereof. IND 50.001. Specifically in IND 50.04, it is stated, "This code shall not limit the power of cities, villages and towns to make, or enforce, additional or more stringent regulations, provided the same do not conflict with this code or with any other rule of the department of industry, labor and human relations." Ch. IND 51 deals with definitions and standards for construction; ch. IND 52 covers general requirements; and ch. IND 53 relates to structural requirements of public buildings. The code has chapters relating to specialized buildings and the specialized requirements for schools and other places of instruction are set forth in ch. IND 56.

While this building code is quite detailed and specifically covers public and private schools, nevertheless, it was promulgated as minimum standards of performance for the design, construction, and alteration of buildings and expressly does not purport to pre-empt the field. This is abundantly clear from sec. 101.101, Stats., which relies in part on the approval of plans and the inspection by municipalities of the first, second, and third class under given circumstances and from the provisions of sec. IND 50.04 that the code does not limit the power of cities, villages and towns to make or enforce additional or more stringent regulations.

In *Caeredes v. Platteville* (1933), 213 Wis. 344, 251 N. W. 245, it was held the state building code set forth only minimum standards and did not exclude the applicability of local building codes to such construction. We do not think *Milwaukee v. McGregor, supra,* is to the contrary. That case was decided on the sovereignty theory, an approach we do not follow in this case. In addition, *McGregor* was decided two years before the creation of the industrial commission and before the state building code was promulgated.

We hold that while the state building code is comprehensive, there was no intention on the part of the state to pre-empt the field and public buildings including public and private schools must conform thereto and to such local building codes as are not inconsistent therewith. We would think a school district would be anxious to conform to local building codes and to co-operate with local building inspectors for the safety of the public and especially the children who are required to use such buildings. There is no doubt that the state of Wisconsin has the constitutional power to prescribe standards regulating school construction and can entirely pre-empt the field so as to deprive municipalities of any voice in these matters, but it has not done so. Therefore, the school district was properly required to pay a building permit fee and accept the inspection of its addition to the high school.

*By the Court.*—Judgment reversed.