GEORGE H. HANDY, M.D., State Health Officer Department ofHealth and Social Services
You ask my opinion as to whether sec. 160.01 (3), Stats., removes the authority of the Health Department of the City of Milwaukee, as local agent for the Department of Health and Social Services, to inspect public school lunchrooms. *Page 55 
Section 115.345, Stats., as created by ch. 190, Laws of 1973, authorizes school districts, with the approval of the Superintendent of Public Instruction, to establish programs to provide the opportunity for elderly persons to participate in the school lunch program. A number of school districts, including Milwaukee, apparently had already implemented some type of program furnishing meals to elderly persons prior to passage of ch. 190. Hence, sec. 6 of such chapter reads as follows:
 "APPLICABILITY. This act shall have no effect upon school districts which are carrying on food services program for the elderly on the effective date of this act. However, the superintendent shall approve such programs before state aid may be disbursed under this act. No retroactive payments may be made."
Mr. George A. Kupfer, Superintendent of the Bureau of Consumer Protection and Environmental Health, City of Milwaukee Department of Health, has informed me that private school lunchrooms are included within the department's restaurant inspection and licensing program. For purposes of the instant question, I presume that the City Health Department is acting as a designated agent for the State Department of Health and Social Services pursuant to such department's authority to designate an agent for the enforcement of ch. 160. See see. 160.03 (6), Stats. Mr. Kupfer further informs me that neither the state nor the city has maintained the inspection or licensing program in public schools because of the principle that a statute imposing license fees does not apply to state public agencies, unless the intent is clearly expressed. See 46 OAG 211, 212 (1957); 53 C.J.S. 558.
Chapter 190, Laws of 1973, amended the definition of "restaurant" of sec. 160.01 (3), Stats. (1971), to exclude "any public school lunchroom." As of the effective date of ch. 190, April 30, 1974, the Department of Health and Social Services, by virtue of such amendment, lost whatever control it had over public school lunchrooms unless see. 6, quoted above, is construed to continue such control. It is my opinion that neither the Department of Health and Social Services nor the Health Department of the City of Milwaukee, as agent for the Department of Health and Social Services, has authority over public school lunchrooms in the City of Milwaukee by virtue of the present ch. 160, Stats. *Page 56 
Section 6, previously quoted, provides that food service programs not in compliance with ch. 190, but initiated prior to the effective date of such chapter, may be continued. The apparent intent of such section was to allow school districts the flexibility of continuing prior instituted programs of food service for the elderly with the specific condition, however, that approval of the Superintendent of Public Instruction of such programs is necessary to receive state aid.
For example, sec. 115.345, Stats., provides that the new food service programs must provide at least one meal per day for each day that the school is in regular session. If, however, a school district had been conducting a food service program prior to passage, which program provided for the serving of meals only three days a week, this program could be continued in such form regardless of the new, more stringent requirements. It would be unreasonable to construe sec. 6 of ch. 190, Laws of 1973, to require public school lunchrooms in districts beginning programs for the elderly before the effective date of ch. 190, Laws of 1973, to be subject to regulation as restaurants while those conducting the same or similar programs instituted after such date not to be subject to the regulation. Section 6 of ch. 190 states that the act shall have no effect upon school districts, not that it shall have no effect upon the regulatory powers of the Department of Health and Social Services and its designated agents. By amendment of sec. 160.01 (3), Stats. (1971), the legislature excepted "any public school lunchroom" from the definition of "restaurant" and your department is thereby precluded from regulating public school lunchrooms under sec. 160.02, Stats.
The City of Milwaukee does, however, have authority independent of ch. 160, Stats., to act in the area of health regulation. Section 62.11 (5), Stats., adopted by Milwaukee as sec. 6.04, Milwaukee Charter, provides as follows:
 "(5) POWERS. Except as elsewhere in the statutes specifically provided, the council shall have the management and control of the city property, finances, highways, navigable waters, and the public service, and shall have power to act for the government and good order of the city, for its commercial benefit, and for the health, safety, and welfare of the public, and may carry out its powers by license, regulation, suppression, borrowing of money, tax levy, appropriation, fine, *Page 57 
imprisonment, confiscation, and other necessary or convenient means. The powers hereby conferred shall be in addition to all other grants, and shall be limited only by express language."
Having such authority to establish regulations and licensing programs for the promotion of public health, the concern then is whether such an exercise of the city's police power is applicable to public schools.
In Hartford Union High School v. Hartford (1971), 51 Wis.2d 591,187 N.W.2d 849, the City of Hartford attempted to impose its municipal building code on the construction of a public high school by the Hartford School District. The municipal building code required the purchase of a building permit by the school district prior to construction. This attempt to impose a local building code and collect a building permit fee is analogous to the instant question, that of imposing local food service regulation and license requirements on public school lunch programs.
The court approached the sovereign immunity problem at p. 593 with this introduction:
 "In many of the cases in other jurisdictions the courts have decided this ever-recurring conflict between school districts and municipalities solely on the basis of whether education in that jurisdiction was a state function and if so, sovereign immunity completely protected the school district from municipal building regulations. The more modern approach to the problem admits the building of public schools is a part of education and may be a state function but recognizes immunity of the school district, not because of sovereignty but because the state has affirmatively acted in such a comprehensive manner as to pre-empt the area and thus exclude any application of police power by a municipality whether under home rule or otherwise . . . ."
Thereafter the court thoroughly examined the question of preemption and decided as follows at p. 599:
 "We hold that while the stale building code is comprehensive, there was no intention on the part of the state to pre-empt the field and public buildings including public and private schools must conform thereto and to such local *Page 58 
building codes as are not inconsistent therewith. We would think a school district would be anxious to conform to local building codes and to co-operate with local building inspectors for the safety of the public and especially the children who are required to use such buildings. There is no doubt that the state of Wisconsin has the constitutional power to prescribe standards regulating school construction and can entirely pre-empt the field so as to deprive municipalities of any voice in these matters, but it has not done so. Therefore, the school district was properly required to pay a building permit fee and accept the inspection of its addition to the high school."
An argument could be made in the instant situation that the state had preempted the regulation, and that by dropping public schools from the definition of "restaurant," the legislative intent was to preclude both the state and cities from regulating this area.
However, applying the analysis used in Hartford, I find no indication of legislative intent to completely preempt the entire area of regulation of food service. Thus, the removal of public school lunchrooms from the definition of "restaurant" in ch. 160, Stats., does not in my view preclude the city from inspecting public school lunchrooms. On the contrary, such inspection is now on firmer ground since the question of preemption by the state is removed. The removal of public schools from the definition of "restaurant" does not preclude the Department of Public Instruction, after complaint, from inspecting the lunchroom facility to ensure that it is not ". . . in such condition as to endanger the lives or health of the pupils . . . ." Sec. 115.33, Stats.
There is further evidence to show that both state and local health officials are intended to be active in public schools. Sections 141.01 (6) (b) and 141.015 (8), read together, require the local health officer under the direction of the district health officer to "make a sanitary inspection periodically of all school buildings . . . and report thereon to those responsible for the maintenance thereof." I conclude therefore that the Milwaukee City Health Department can be empowered by specific ordinance to inspect and license public school lunchrooms.
BCL:WMS *Page 59