ROBERT P. RUSSELL, Corporation Counsel, Milwaukee County
Your letter and attachments inform me that a man and wife rent a single family home in the City of Brookfield in an area zoned "R-3." Evidently, the permitted uses in an "R-3" district include "one-family dwellings, accessory buildings and uses." Section17.02 (14), of the Municipal Code defines "one-family dwelling" as a building "designed for and occupied exclusively by one family." Section 17.02 (17), defines "family" as follows: *Page 343 
 "FAMILY. One or more persons related by blood, adoption or marriage, living and cooking together as a single housekeeping unit, exclusive of household servants. A number of persons but not exceeding two (2) living together as a single housekeeping unit though not related by blood, adoption or marriage shall be deemed to constitute a family."
The couple are licensed foster parents in accordance with sec.48.62, Stats. After moving into the home in question, an unwed mother and her infant were placed with the couple for foster care. Apparently, the city regards such a living arrangement to be in violation of the zoning ordinances as an improper use of a one-family dwelling in an area zoned "R-3."
In this context, you have requested my opinion on the following questions:
 "1. Does the definition of the word `family' in the amended Brookfield City Zoning Ordinance encompass a foster family consisting of a husband and wife, together with a 16 year old girl and the girl's new born baby, both living with them though unrelated, pursuant to the above-mentioned state foster home license?
 "2. If, in your opinion, the Brookfield City Ordinance excludes the above described living arrangement, is the ordinance constitutionally valid in this respect?"
Question I
In Missionaries of La Salette v. Whitefish Bay, 267 Wis. 609,66 N.W.2d 627 (1954), our court considered whether the definition of family in the Whitefish Bay zoning code precluded a number of unrelated priests from occupying a home situated in a single family dwelling use district. The ordinance declared that "a family is one or more individuals living, sleeping, cooking, or eating on premises as a single housekeeping unit." It was silent as to whether the individuals need be related by blood or marriage.
The court decided that the manner in which the six priests occupied the property violated neither the letter nor the spirit of the single family dwelling restriction. The decision is bottomed on the rule that: *Page 344 
 "Restrictions contained in a zoning ordinance must be strictly construed. A violation of such ordinance occurs only when there is a plain disregard of its limitations imposed by its express words. . . ." 267 Wis., at p. 614. (Emphasis supplied.)
The absence of express language regarding relatedness caused the court to hold:
 "For the purposes of its zoning code the legislative body of Whitefish Bay has in precise language defined the term `family.' . . . Had it been the pleasure of the legislative body when defining the word `family,' to have excluded in the district any dwelling use of premises there situated, by a group of individuals not related to one another by blood or marriage, it might have done so. Since there is complete absence of any such limitation, it seems clear that it was not the legislative intent to restrict the use and occupancy to members of a single family related within degrees of consanguinity or affinity.
"***
 "It is not within the court's province to add or detract from the clear meaning that the village board has expressed in its own definition of the word `family.' . . ." 267 Wis. 614-616.
The standards of construction of Missionaries, supra, were recently reiterated in Browndale International v. Board ofAdjustment, 60 Wis.2d 182, 208 N.W.2d 121 (1973). Applying these principles to the definition in question forces me to conclude that its language does not encompass (i.e., permit) the foster home situation you relate.
The Brookfield definition deals with relatedness in express words. Related and nonrelated families are separately defined. Families composed of unrelated persons are expressly limited to two persons. In my opinion, the two sentences clearly manifest the intent that a family can be composed of either related or two unrelated persons as opposed to the meaning which would result if "and/or" were interjected between the sentences. Moreover, the fact it was adopted because of the decision in Village of BelleTerre v. Boraas, 416 U.S. 1 (1974), indicates that the intent was to place strict limitations on unrelated occupancy of single family dwellings. Thus, both the letter and spirit of the ordinance cause me to conclude that the four persons *Page 345 
now in the home constitute two families of the type described in the definition's first sentence.
Question II
Having concluded that the language of the ordinance precludes the above described living arrangement, we reach your second question regarding the constitutional validity of such a prohibition.
The second question is more easily answered if it is divided into the two issues of: (1) is it constitutionally permissible to premise zoning laws on relationship, and (2) if such laws are constitutional, do they control state action.
Zoning laws based on relationship are valid. In Village ofBelle Terre v. Borass, supra, the Court was concerned with an ordinance that defined family as:
 ". . . `[o]ne or more persons related by blood, adoption, or marriage, living and cooking together as a single housekeeping unit, exclusive of household servants. A number of persons but not exceeding two (2) living and cooking together as a single housekeeping unit though not related by blood, adoption, or marriage shall be deemed to constitute a family.'" 416 U.S. at p. 2.
The village sought to apply the definition to preclude six unrelated college students from occupying a single family dwelling. Since the ordinance only restricts the number of unrelated persons who may occupy a single family residence, the students challenged enforcement against them as a denial of equal protection which abridged their fundamental rights to travel, associate freely and have privacy. It was argued that the ordinance was aimed at prohibiting alternative life styles, rather than achieving proper zoning objectives.
The Supreme Court rejected the students' fundamental rights infringement argument. It applied the traditional rational basis standard and upheld enforcement of the ordinance against the students. Writing for the majority, Justice Douglas concluded:
 "The regimes of boarding houses, fraternity houses, and the like present urban problems. More people occupy a given space; more cars rather continuously pass by: more cars are parked; noise travels with crowds. *Page 346 
 "A quiet place where yards are wide, people few, and motor vehicles restricted are legitimate guidelines in a land-use project addressed to family needs. This goal is a permissible one within Berman v. Parker, supra [348 U.S. 26 (1954)]. The police power is not confined to elimination of filth, stench, and unhealthy places. It is ample to lay out zones where family values, youth values, and the blessings of quiet seclusion and clean air make the area of sanctuary for people." 416 U.S. at p. 9.
The Court in Moore v. East Cleveland, 431 U.S. 494,97 S.Ct. 1932 (1977), voided an ordinance that attempted to prescribe categories of relationship that could and could not live together. Justice Powell's opinion noted, in part:
 "But one overriding factor sets this case apart from Belle Terre. The ordinance there affected only unrelated
individuals. It expressly allowed all who were related by `blood, adoption, or marriage' to live together, and in sustaining the ordinance we were careful to note that it promoted `family needs' and `family values.' 416 U.S., at 9. East Cleveland, in contrast, has chosen to regulate the occupancy of its housing by slicing deeply into the family itself. This is no mere incidental result of the ordinance. On its face it selects certain categories of relatives who may live together and declares that others may not. In particular, it makes a crime of a grandmother's choice to live with her grandson in circumstances like those presented here.
 "When a city undertakes such intrusive regulation of the family, neither Belle Terre nor Euclid governs; the usual judicial deference to the legislature is inappropriate. . . ." 97 S.Ct. at p. 1935. (Emphasis supplied.)
The decision in Moore v. East Cleveland, supra, in enlarging on the holding of the Court in Village of Belle Terre v. Borass,supra, makes it clear that such ordinances are to be judged as to whether they promote "family needs."
Accordingly, distinctions between related and unrelated persons in zoning ordinances are not inherently unconstitutional. This conclusion raises the second issue of whether state action is subject to such ordinance. *Page 347 
The term "foster" is defined in Webster's Seventh NewCollegiate Dictionary as:
 ". . . parental care though not related by blood or legal ties."
The foster home is licensed by the state or one of its instrumentalities under sec. 48.62, Stats., so that children may be placed in a home to receive the parental care they have been deemed to be in need of. The Children's Code, ch. 48, Stats., manifests a strong public interest in providing care for delinquent, dependent and neglected children in noninstitutional settings designed to afford a healthy family environment. Widespread adoption and enforcement of the Belle Terre definition of family would keep foster homes out of the very neighborhoods they need to be in.
There is a clear distinction between foster homes and other unrelated living arrangements. A foster home is not an ad hoc
living arrangement borne of sheer social convenience or economic advantage. The process of placing foster children is the antithesis of a casual decision of friends to live together. A child is placed in a home only after careful screening reveals the prospective foster parents and physical environment to be exemplary. Placement is an addition to a preexisting biological family or family-type arrangement, rather than a creation of a new household. In essence, foster homes do not pose the problems which concerned the Supreme Court in Belle Terre.
The ordinance under consideration would seriously frustrate state action in the placement and care of foster children if the licensing of a foster home is rendered, in actuality, a nullity by local zoning regulations.
In City of Milwaukee v. McGregor, 140 Wis. 35, 121 N.W. 642
(1909), the city brought an action against the Board of Regents, its contractors and architect to prevent continued construction of a school building without a city building permit. In this leading case, it was concluded that neither the state nor its agents were subject to local control. The court has reiterated this principle on several occasions prior to its decision inHartford Union High School v. Hartford, 51 Wis.2d 591,187 N.W.2d 203 (1970). In this later case, the court turned from what it described as the "mechanistic approach of classification into sovereign immunity" and gave consideration to the question of whether the state had preempted the field of regulation (51 Wis.2d at p. 591). Significantly, in the Hartford *Page 348 Union High School case, the court was concerned with the situation where the state and local unit of government had adopted building codes. In deciding the case on the theory of preemption, all that was involved was mere inconvenience, not prohibition. In the instant matter, we are not concerned with two levels of legislation on the identical subject matter and the question of preemption is not involved. It is problematical how the court would rule when faced with a situation such as this where the principle of preemption could not be easily applied.
In attempting to predict how the court would decide this issue, the attitude of the court towards the foster home is important. In the Browndale case, supra, the court in discussing foster homes, stated:
 ". . . therapeutic homes are not substitutes for the biological parent or home. Foster parents and foster homes are an attempt to be almost a complete substitution. The foster parents' role is `in loco parentis.' . . . Foster homes try to duplicate the biological family . . . Lastly, from the above differences it can be reasonably said that foster homes constitute a `family' under zoning laws even before any child is placed with the foster parent. As appellants correctly point out, `. . . The residential character of a foster home does NOT depend upon the foster child. . . .' . . ." 60 Wis.2d at pp. 204-206. (Emphasis supplied.)
However, it should be noted that in Browndale International v.Board of Adjustment, supra, the zoning restriction which precluded therapeutic homes was upheld. Nevertheless, in upholding the ordinance, it was carefully observed that Browndale International:
 ". . . is not the corporation engaged in the direct care and maintenance of these emotionally disturbed children; nor is it licensed by the state of Wisconsin as a child welfare agency. . . ." 60 Wis.2d at p. 187.
Arguably, the decision would have been otherwise if Browndale had been licensed by the state.
Thus, in the present situation, we find a state licensed activity, which activity is favored by the court, but is in direct conflict with local zoning regulations. Under these circumstances, I am of the opinion that the court probably would return to the principle established in the early case of City ofMilwaukee v. McGregor, supra, and hold that this state licensed activity is immune from local *Page 349 
regulations. I am of the opinion that faced with this situation, the court would probably rely on the immunity theory or a similar theory, for if the foster home program can be prohibited or largely restricted by local governments, then through artful drafting of local laws, many state programs could be similarly frustrated. In my opinion, the court would seek to avoid such consequences.
In conclusion, it is my opinion that a license to operate a foster home, whether granted directly or indirectly by the state, is an exercise of the sovereign power of the state and is immune from local zoning regulations. The argument that the zoning regulation restricts private activity, i.e., the licensees or foster parents rather than state action is without merit, for the state often acts through private parties. The court was well aware of this fact in City of Milwaukee v. McGregor, supra.
With the exception of state construction, which has been made subject to local zoning by act of the Legislature (see sec. 13.48
(13), Stats.), any opinions to the contrary in 63 Op. Att'y Gen. 34 (1974), and 65 Op. Att'y Gen. 93 (1976), are superseded by this opinion.
BCL:PRS