ROBERT P. SORENSEN, PH.D., State Director Board of Vocational,Technical and Adult Education
You ask whether Vocational, Technical and Adult Education District No. 4 is subject to the jurisdiction of the Madison Equal Opportunities Commission under an ordinance prohibiting employment discrimination. *Page 227 
If so, you ask what is the extent of such jurisdiction. District No. 4 encompasses parts of twelve counties and has major facilities in Madison, Fort Atkinson, Watertown, Reedsburg and Portage.
Although not free from doubt, it is my opinion that the Madison Equal Opportunities Commission does have jurisdiction over the employment practices of District No. 4. Such jurisdiction, however, is limited to employment within the geographic boundaries of the City of Madison.
Education in Wisconsin constitutes a state function. WestMilwaukee v. Area Bd. Vocational, T. A. Ed., 51 Wis.2d 356,376, 187 N.W.2d 387 (1971). Vocational, technical and adult education districts are quasi-municipal corporations which act as agents of the state for the purpose of administering the state's system of vocational, technical and adult education. Green BayMet. S. Dist. v. Voc., T. A. Ed., 58 Wis.2d 628, 638,207 N.W.2d 623 (1973). A basic issue underlying your questions is whether the employment practices of District No. 4 are immune from regulation by the City of Madison because the District is performing a state function.
In Milwaukee v. McGregor, 140 Wis. 35, 121 N.W. 642 (1909), the court held that a city could not require the State Board of Normal School Regents to comply with the city's building permit ordinance before erecting a school building. The court concluded that "the state . . . is as exempt from mere general or local laws as the king was of old in the exercise of his sovereign prerogatives." 140 Wis. at 37. See also Kentucky Inst., Educationof Blind v. City of Louisville, 123 Ky. 767, 97 S.W. 402, 404
(1906); Board of Regents of Universities v. City of Tempe,88 Ariz. 299, 356 P.2d 399, 406 (1960).
McGregor involved a state agency — the State Board of Normal School Regents. Such state agencies have been found to differ "very widely" from quasi-municipal corporations such as school districts. Sullivan v. Board of Regents of Normal Schools,209 Wis. 242, 244-45, 244 N.W. 563 (1932). It is not clear whether McGregor would be extended to immunize vocational school districts from a city's regulatory ordinances simply because the districts perform a state function. *Page 228 Cf. Milwaukee v. Firemen Relief Asso., 42 Wis.2d 23, 34,165 N.W.2d 384 (1969).
In Green County v. Monroe, 3 Wis.2d 196, 87 N.W.2d 827 (1958), the court rejected the attempted application of a city zoning ordinance to the construction of a county jail. The court noted that counties have extensive police powers, that construction of the jail was subject to a comprehensive state building code, and that the county was required by state law to locate the jail in the city. 3 Wis.2d at 201-02. The court concluded that the city's zoning authority could not be "construed to include the state, or in this instance the county, when in conflict with
special statutes governing the location and construction of a county jail" (emphasis added). 3 Wis.2d at 202. The court, however, did not expressly endorse the converse proposition,i.e., that counties are subject to city regulation in the absence of any conflict.
The decisions of courts in other jurisdictions have not been uniform in result. Some courts have exempted school districts from city building codes. Salt Lake City v. Board of Education,52 Utah 540, 175 P. 654 (1918); Hall v. City of Taft,47 Cal. 2d 177, 302 P.2d 574 (1956). In Salt Lake City, 175 P. at 658-59, the court stated:
 [C]ounsel for . . . [the city] . . . concede that the [city's] ordinances . . . would have no application to what they call state buildings, although such buildings are located within the limits of the city. . . . Under our Constitution and statutes, however, we can conceive of no distinction between what are denominated by counsel state buildings, such as the buildings of the State University, or the Capitol, and our school buildings. . . . [T]he public school buildings and their control are of as much concern to the state as are the other buildings . . . . [I]f state buildings must be excluded, then public school buildings must likewise be excluded.
Similarly, in Hall, 302 P.2d at 578, the court stated:
 While a large degree of autonomy is granted to school districts by the Legislature . . . no statute or constitutional provision . . . expressly makes school buildings or their construction any more *Page 229 
amenable to regulation by a municipal corporation than structures which are built and maintained by the state generally for its use.
To the contrary, other courts have held that school districts are subject to city building codes and regulations. Kansas Cityv. Fee, 174 Mo. App. 501, 160 S.W. 537 (1913); Kansas City v.School Dist. of Kansas City, 356 Mo. 364, 201 S.W.2d 930 (1947);Port Arthur Independent Sch. Dist. v. City of Groves, 376 S.W.2d 330
(Tex. 1964); Edmonds Sch. Dist. No. 15 v. City of MountlakeTerrace, 77 Wash. 2d 609, 465 P.2d 177 (1970); Cedar Rapids Com.Sch. Dist. v. City of Cedar Rapids, 252 Iowa 205, 106 N.W.2d 655
(1960). These courts have emphasized, however, that the city's regulations must be reasonable and must not conflict with the school district's performance of its education function. For example, in Edmonds, 465 P.2d at 179-81, the court commented:
 The City of Mountlake Terrace cannot . . . impair the educational processes of or limit the standards prescribed by the state for the operation of the public schools . . . for that would be an infringement upon state sovereignty. But . . . subordinate municipalities [are] free to regulate each other in those activities which traditionally are thought to lie within their particular competence and are more proximate to their respective functions.
. . . .
 [N]othing in the constitution or existing law . . . would enable a city . . . [to] interfere with the conduct and operation of the public schools. We do not apprehend that requiring the Edmonds School District to . . . [comply] with the city building code empowers the city to assume any responsibilities or control over the way the education process is conducted. Such matters as curriculum, textbooks, teaching methods . . . or . . . the selection, tenure and compensation of school personnel . . . remain outside of the authority and control of the cities.
Similarly, in Fee, 160 S.W. at 538, the court stated: *Page 230 
 The work of education and everything necessary, or impliedly necessary, to the carrying on of the work is committed to the school board, and the city has no right to interfere with that work or direct how it shall be done . . . .
 [F]ining of this janitor-fireman for running a boiler without a city license is [not] an interference with the board in its work of education. To say that the board, in order to be left wholly free to carry on its work of education, must, with its employes, be absolutely free from all matters of purely police regulation is to say that the board cannot attend to the work of education unless it is allowed to violate, or at least pay no attention to, such regulations. The absurdity of such a statement is its own refutation. . . .
. . . .
 The board's control, management, direction, operation, and care of school property, the policy to be followed in school work, the teachers to be selected, and all other matters directly, or even merely incidentally, connected with the subject of education in general is left free and untrammeled. And it is only in those matters which involve purely a police regulation necessary to the health and safety of persons and property that the city can interfere.
See also Cedar Rapids, 106 N.W.2d at 655.
In addition, these courts emphasized that no authority had been conferred upon the school districts to regulate the area, CedarRapids, 106 N.W.2d at 658; cf. Board of Education v. City of St.Louis, 267 Mo. 356, 184 S.W. 975 (1916), nor had the area of regulation been legislatively preempted. Edmonds,465 P.2d at 180.
Given this background, the court held in Hartford Union HighSchool v. Hartford, 51 Wis.2d 591, 187 N.W.2d 849 (1971), that the school district was subject to the city building code. Initially, the court observed, 51 Wis.2d at 593:
 In many of the cases in other jurisdictions the courts have decided this ever-recurring conflict between school districts and *Page 231 
municipalities solely on the basis of whether education in that jurisdiction was a state function and if so, sovereign immunity completely protected the school district from municipal building regulations. The more modern approach to the problem admits the building of public schools is a part of education and may be a state function but recognizes immunity of the school district, not because of sovereignty but because the state has affirmatively acted in such a comprehensive manner as to preempt the area and thus exclude any application of police power by a municipality whether under home rule or otherwise.
The court rejected the city's contention that the school district was subject to the city building code because "construction of a school building . . . is not education and therefore not a state function." 51 Wis.2d at 594. To the contrary, the court stated that "a broad view of education must be taken and the construction of schools is included in the state's concern." Id.
In discussing the preemption approach, the court identified four factors which must be given consideration: (1) nature of the educational mandate, (2) structure of the governmental arm empowered to carry out that mandate, (3) the specific legislation delegating the responsibility for construction to the state agency, and (4) the nature and comprehensiveness of the legislation regulating the construction of public school buildings. 51 Wis.2d at 595. Applying the preemption approach, the court decided that neither specific authority delegated to school districts over selection and management of school property, ch. 121, Stats., nor the provisions of the comprehensive state building code, ch. 101, Stats., indicated legislative intent to preempt the field of regulating school construction. 51 Wis.2d at 597-99.
The court acknowledged that McGregor "may well support the school's argument of immunity from the city's building code" but the court concluded that "[t]hat case was decided on the sovereignty theory, an approach we do not follow in this case" (emphasis added). 51 Wis.2d at 594, 599. It is uncertain whether the sovereignty approach of McGregor, or the preemption approach of Hartford, or some other approach would be applied by the court if it were *Page 232 
required to decide whether vocational school districts are subject to city equal employment opportunity ordinances.
One possible approach would be to construe McGregor as granting immunity to state agencies but not to school districts which carry out the state's education function. Cf. Edmonds,465 P.2d at 181 (Neill, J., concurring). There is at least reasonable doubt that the court would have reached the same result inHartford if a state agency such as the Board of Regents were involved rather than a school district. On the other hand, the court recognized in Hartford, 51 Wis.2d at 594, that McGregor
and Monroe "may well support the school's argument of immunity."
Another possible approach would be to attempt to distinguish for immunity purposes between those matters which are and those which are not part of the state's education function. For example, immunity might extend to matters such as curriculum, textbooks, teaching methods, or the selection, tenure and compensation of school personnel, but immunity might not extend to matters such as construction of school buildings. Edmonds,465 P.2d at 180-81; Fee, 160 S.W. at 538; Cedar Rapids,106 N.W.2d at 659. This approach, however, was explicitly rejected inHartford, 51 Wis.2d at 594, where the court took a "broad view of education."
A third possible approach would be to extend immunity to school districts only where application of a city regulation would conflict with the performance of a school district's education function. Cf. Monroe, 3 Wis.2d at 202; Edmonds, 465 P.2d at 180-81; Fee, 160 S.W. at 538; Cedar Rapids, 106 N.W.2d at 659. Although McGregor apparently confers total immunity regardless of conflict, the court did emphasize that the "state was not only not expressly included in the charter power of regulation, but the general law of the state . . . quite plainly commanded the Board of Regents to erect the building without regard to the judgment of any one outside of its own members." 140 Wis. at 38;see Fee, 160 S.W. at 539.
In 66 Op. Att'y Gen. 342 (1977), I concluded that a foster home licensed under state law was not subject to a city zoning ordinance because the zoning ordinance was in direct conflict with and would seriously frustrate a state licensed activity. I distinguished Hartford *Page 233 
on the grounds that Hartford involved mere inconvenience, not prohibition, and that preemption was involved only where there were two levels of legislation on the identical subject matter. 66 Op. Att'y Gen. at 348. I suggested that where "a state licensed activity . . . is in direct conflict with local zoning regulations . . . . [T]he court probably would return to the principle established in . . . Milwaukee v. McGregor . . . and hold that this state licensed activity is immune from local regulations." 66 Op. Att'y Gen. at 348-49.
Turning to the question you raise, it is my opinion that the City of Madison ordinance prohibiting employment discrimination neither conflicts with the education function of District No. 4 nor is it preempted by state law. The Wisconsin Fair Employment Act, secs. 111.31-111.37, Stats., prohibits discrimination in employment. Although the prevention of employment discrimination is a matter of state-wide concern, sec. 111.31, Stats., cities are not preempted thereby from adopting equal employment opportunity ordinances. Cf. Wis. Environmental Decade, Inc. v.DNR, 85 Wis.2d 518, 533-34, 271 N.W.2d 69 (1978).
On the contrary, the Legislature has encouraged cities to adopt such ordinances. Sec. 66.433 (3), Stats.; cf. 55 Op. Att'y Gen. 231 (1966). Indeed, in Federated Rural Electric Insurance Corp.v. Madison EOC, No. 79-538, 26 E.P.D. para. 32,077 (Wis.Ct.App. April 27, 1981), the court expressly decided that the Wisconsin Fair Employment Act does not preempt the Madison equal opportunity ordinance.
I conclude, therefore, that the Madison Equal Opportunities Commission does have jurisdiction over the employment practices of District No. 4. Your second question concerns the extent of such jurisdiction.
The general rule is that absent clear legislative authorization to the contrary, cities cannot give their ordinances extra-territorial effect and cannot prohibit activities outside city boundaries. 56 Am. Jur. 2d Municipal Corporations sec. 436. As the court stated in Wis. Environmental Decade, Inc.,85 Wis.2d at 533, n. 8: "[T]he jurisdiction and authority of a city is . . . limited to the territory within its boundaries. . . .Safe Way Motor Coach v. Two Rivers, 256 Wis. 35, *Page 234 39 N.W.2d 847 (1949). Its ordinances have no extra-territorial effect. Cegelski v. Green Bay, 231 Wis. 89, 285 N.W. 343 (1939)."
In the case of city equal opportunity ordinances, there is no legislative indication that such ordinances may be given extra-territorial effect. Contrariwise, such ordinances are encouraged only to benefit persons "residing or working within the municipality." Sec. 66.433 (3) (a), Stats. Accordingly, it is my opinion that the jurisdiction of the Madison Equal Opportunities Commission over the employment practices of District No. 4 is limited to employment within the geographic boundaries of the City of Madison.
BCL:DCR