WILBUR J. SCHMIDT, Secretary Department of Health and SocialServices
You have requested my opinion on four questions regarding a continuing conflict between municipal zoning and the authority of the Department of Health and Social Services to carry out a group foster home program.
The Children's Code, ch. 48, Stats., vests the Department of Health and Social Services (hereinafter, the Department) with extensive authority to regulate and facilitate foster care. The *Page 35 
Department may itself maintain foster homes pursuant to sec.48.52, Stats., or license others to do so. Section 48.62, Stats., requires that all foster homes be licensed. A license may be obtained from the Department, a county agency, or a licensed (private) child welfare agency. But all licenses are issued pursuant to rules prescribed by the Department under sec. 48.67, Stats. Moreover, the Department may inspect for and take action against standard violations irrespective of the source of a license. Sec. 48.74, Stats.
Although the term "group foster home" does not appear in ch. 48, Stats., the Department defines such a home as a foster home for which an exception has been made pursuant to sec. 48.64 (3), Stats., with respect to the number of unrelated children that may be placed in it. Making exceptions is governed by rules promulgated pursuant to sec. 48.67, Stats. [7 Wis. Adm. Code section PW-CY 40.62 (2) (g)]
As I understand it, the group foster home program involves the Department simply making systematic exceptions for up to eight unrelated children in a single facility. Presumably, the program is designed to better utilize (i.e., place more children in) highly successful family operated and agency operated homes.
Group facilities, like foster homes generally, are of two basic types. First, there is the family group foster home in which a married couple or single person make their own home available for the care of five to eight children. The second type of facility is the agency operated group foster home which is owned, operated or contracted for by the agency. The agency either employs married couples or single individuals to staff the home.
The purpose of foster home placement is, of course, to provide shelter and care for children in an environment that approximates a family setting. In keeping with that purpose, it is evidently essential that foster homes be located in normal residential neighborhoods. The group foster home program is being thwarted, however, by local zoning ordinances which, if applicable, restrict them to areas zoned for boarding house, hotel, or commercial use. Such areas are generally inappropriate for foster homes.
In this context, you ask the following four questions: *Page 36 
 "1. Given the strong State Statutory Policy mandating appropriate care and rehabilitation for children to what extent may local zoning ordinances restrict the establishment of these group foster homes in particular residential use districts of counties, cities, towns, and villages?
 "2. May a municipality require a group foster home to obtain a license or use permit issued by the municipality in addition to a State license issued pursuant to Chapter 48?
 "3. Do family group foster homes and agency-operated group foster homes both come within the same category for purposes of determining the residential nature of the home and its compliance with the residential nature and characteristics of particular residential use districts?
 "4. Can the Definition of Family in zoning ordinances of counties, cities, towns, and villages, be written in such a way as to exclude group foster homes of eight or less foster children?"
Questions One and Three
It is a well-established principle that the state and its agencies are not subject to general statutes or municipal ordinances unless a statute specifically provides otherwise.Milwaukee v. McGregor (1909), 140 Wis. 35, 121 N.W. 642; State v.Milwaukee (1918), 145 Wis. 131, 129 N.W. 1101; Fulton v. State Annuity Inv. Board (1931), 204 Wis. 355, 236 N.W. 120; State ex rel.Martin v. Reis (1939), 230 Wis. 683, 284 N.W. 580; Kenosha v.State (1966), 35 Wis.2d 317, 151 N.W.2d 36. In my opinion, the zoning enabling statutes (e.g., secs. 59.97, 60.74, and 62.23
(7), Stats.) fall within the "general statute" category of the above rule. Moreover, the zoning regulations made possible by the enabling statutes are, of course, general municipal ordinances.
In Milwaukee v. McGregor, supra, the Supreme Court held that a building being constructed by the State Board of Normal School Regents for public use was immune from the city of Milwaukee's building code. In so holding, the court enunciated the classic sovereignty theory:
 ". . . the people of the state, in their sovereign capacity, except as restrained by some constitutional limitation, . . . is [sic] as *Page 37 
exempt from mere general or local laws as the king was of old in the exercise of his sovereign prerogatives . . ." 140 Wis. at 37.
The court also alluded to what is sometimes called the "statutory theory" of state immunity from local police powers:
 ". . . express authority to a state agency to do a particular thing in a particular way supersedes any local or general regulation conflicting therewith . . . ." 140 Wis. at 37.
One commentator asserts that in the majority of jurisdictions, where a state agency can find authority in a statute to do a certain act, and the act results in a conflict with local zoning, the courts hold the zoning ordinances inapplicable. Wolff, TheInapplicability of Municipal Zoning Ordinances To GovernmentalLand Uses, 19 Syr. L. Rev. 698 (1968).
In Green County v. Monroe (1958), 3 Wis.2d 196, 87 N.W.2d 827, the sole issue was whether the county was subject to city zoning ordinances in locating and constructing a county jail. The trial court relied on McGregor, supra, in holding the county exempt from the city's zoning ordinances. In affirming the lower court, the Supreme Court applied the following general rules:
 "`Zoning restrictions cannot apply to the state or any of its agencies vested with the right of eminent domain in the use of land for public purposes.' 8 McQuillin, Mun. Corp. (3d ed.), p. 43, sec. 25.15.
"* * *
 "`Most of the courts to which the question has been submitted, appear to have decreed that unless a different intention is clearly manifested, states, municipalities, the federal government, and other public subdivisions, are not to be bound by the requirements of a zoning ordinance, especially where the proposed use is not within a "nuisance" classification and where the buildings are used for "governmental" and not merely for "proprietary" uses.'" [Metzenbaum, 2 Law of Zoning (2d ed.)]. 3 Wis.2d 198-199.
Accordingly, the court held: *Page 38 
 ". . . The general words of the statutes conferring zoning powers on cities cannot be construed to include the state, or in this instance the county, when in conflict with special statutes governing the location and construction of a county jail." 3 Wis.2d at 202.
 Green County, supra, is cited in the 1965 revision of 8 McQuillin, Mun. Corp. (3rd), for the following proposition:
 "Municipal zoning regulations or restrictions usually do not apply to the state or any of its subdivisions or agencies, unless the legislature has clearly manifested a contrary intent. Thus, properties and the uses thereof may be immune or exempt from the operation of municipal zoning regulations where owned or controlled by counties . . ." See. 25.15 at 45.
In applying the general rule of state immunity from local police power to the group foster home program, I conclude that it does not extend to all group foster homes. Only facilities owned, operated or contracted for by the Department or a county agency are immune from local zoning by virtue of state immunity. Homes owned, operated or contracted for by private child welfare agencies licensed by the Department are not immune. Furthermore, all privately owned family operated homes are subject to local zoning.
A home owned, operated or contracted for by the Department or a county is, in essence, a state institution. Privately owned facilities, although subject to the licensing requirement and extensive state regulation, cannot by virtue of being licensed be considered state institutions. A license is merely a right or a permission granted by some competent authority to carry on a business or to do an act which, without such license, would be illegal. 53 C.J.S. Licenses, sec. 1, p. 445. Issuance of a license to private individuals allowing them to care for foster children in their home cannot be construed as a franchise or agency agreement vesting the licensee with sovereign prerogatives. See State ex rel. Fairchild v. Wisconsin AutoTrades Asso. (1949), 254 Wis. 398, 37 N.W.2d 98.
It must be noted, however, that the legislature recently narrowed the scope of state immunity somewhat by amending see. 1 3.48 (1 3), Stats., making new construction of state facilities subject to local zoning. Ch. 90, sec. 2, Laws of 1973. Consequently, local zoning *Page 39 
would apply to the construction of any new foster home facilities by the Department or a county agency.
Question Two
The general rule with respect to conflicts between municipal and state licensing is stated in 51 Am. Jur. 2d Licenses AndPermits, sec. 100, at 97.
 "Municipal corporations may not enact ordinances that infringe on the spirit of a state law or that are repugnant to the general policy of the state. And it has often been stated that a municipality may not forbid what the state legislature has expressly licensed, authorized, or permitted. In determining whether the provisions of a municipal ordinance conflict with the statute covering the same subject, the test is whether the ordinance prohibits an act that the statute permits, or permits an act that the statute prohibits . . . ."
Further, 51 Am. Jur. 2d Licenses And Permits, sec. 20, p. 27, states:
 ". . . where the state has not evidenced an intent to occupy a particular licensing field completely, inferior political units may, to some extent, enact and enforce their own legislation in the field . . ."
In Johnston v. Sheboygan (1966), 30 Wis.2d 179,140 N.W.2d 247, the issue presented was whether a local food retailing licensing ordinance was inapplicable to bakeries because bakeries were licensed by the state. The court upheld the ordinance, but noted:
 "`. . . municipalities may enact ordinances in the same field and on the same subject covered by state legislation where such ordinances do not conflict with, but rather complement, the state legislation.'" [Citing Milwaukee v. Childs Co. (1928), 195 Wis. 48, 217 N.W. 703.] 30 Wis.2d at 184.
Section 48.62, Stats., precludes municipalities from licensing foster homes. The state has completely preempted the field of foster home licensing. See Hartford Union High School v. Hartford
(1971), 51 Wis.2d 591, 187 N.W.2d 849. Accordingly, I conclude that municipal foster home licensing ordinances are unenforceable. Moreover, other municipal licensing ordinances with the effect of *Page 40 
prohibiting group foster homes would conflict with ch. 48, and therefore would be invalid to the extent they prohibited such homes under Johnston, supra.
Question Four
If an ordinance speaks only in terms of restricting single family dwellings to "families," there is authority for the proposition that the term "family" alone does not necessarily imply blood relationship. Missionaries of La Salette v. WhitefishBay (1954), 276 Wis. 609, 66 N.W.2d 627. But many zoning ordinances include what I refer to as "restrictive definitions" of "family" that limit nonrelated occupancy of single family dwellings. As will be developed below, such ordinances are susceptible to constitutional attack, but it is possible that some would be upheld even though they have the effect of excluding group foster homes from certain use districts. Consequently, the unavoidable answer to this question is "yes."
The United States Supreme Court upheld local zoning as a valid exercise of a state's police power in Euclid v. Ambler RealtyCo., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926), rejecting the argument that zoning restrictions constitute a deprivation of property without due process of law. The court stated, however, that zoning ordinances may not be ". . . clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare." 272 U.S. at 395. In addition to the requirement that zoning ordinances satisfy due process as enunciated by Euclid, supra, they may not discriminate in violation of the equal protection clause of the Fourteenth Amendment. While some inequities may be tolerated, Williamson v.Lee Optical Co., 48 U.S. 438, 75 S.Ct. 461, 90 L.Ed. 563 (1955), a law which might otherwise be upheld as a valid exercise of police power will be struck down where it classifies on the basis of impermissible criteria. Reitman v. Mulkey, 387 U.S. 369,87 S.Ct. 1627, 18 L.Ed.2d 830 (1967).
Restrictive definitions of "family" for zoning purposes have been successfully attacked as being unreasonable in terms of theEuclid test in a number of jurisdictions. See City of Des Plainesv. Trottner, 34 Ill. 2d 432, 216 N.E.2d 116 (1966); Gabe CollinsRealty, Inc. v. City of Margate City, 112 N.J. Super. 341,271 A.2d 430 (1970); Kirsch Holding Company v. Borough of Manasquan,59 N.J. 241, 281 A.2d 513 (1971). Moreover, definitions establishing the *Page 41 
number of unrelated persons that may live in the same dwelling have been successfully attacked as denials of equal protection (in that the number of related persons living in a single dwelling is not regulated) and, as undue infringements on such fundamental rights as freedom of association and the right to privacy. Boraas v. Village of Belle Terre, 476 F.2d 806 (1973). It is important to note, however, that identical arguments have failed in different factual circumstances. Newark v. Johnson,70 N.J. Super. 381, 175 A.2d 500 (1961). [Following Newark, New Jersey enacted a statute exempting foster homes from local zoning.] Palo Alto Tenants Union v. Morgan, 321 F. Supp. 908
(N.D. Cal. 1970).
Our legislature has delegated extensive zoning authority to cities (sec. 62.23 (7), Stats.), counties (sec. 59.97, Stats.), and to towns under certain circumstances (sec. 60.74, Stats.). The delegation of authority to cities, albeit the most extensive, is substantially similar to the authority granted counties and towns. Subsection (7) of sec. 62.23 provides in part:
 "(7) ZONING. (a) Grant of power. For the purpose of promoting health, safety, morals or the general welfare of the community, the council may by ordinance regulate and restrict . . . the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes . . .
 "(b) Districts. For any and all of said purposes the council may divide the city into districts of such number, shape, and area as may be deemed best suited to carry out the purposes of this section; and within such districts it may regulate and restrict the erection, construction, reconstruction, alteration or use of buildings, structures or land . . .
 "(c) Purposes in view. Such regulations shall be made in accordance with a comprehensive plan and designed to lessen congestion in the streets; . . . to promote health and the general welfare; . . . to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks and other public requirements. . . ." *Page 42 
Pursuant to these provisions, many municipalities have created districts restricted to single family dwellings. Often such ordinances define "family" and/or "single family dwelling" in terms of the number of unrelated persons that may live in the same dwelling.
For such ordinances the question becomes: (1) whether there is a reasonable nexus between limiting nonrelated occupancy of single family dwellings and the zoning purposes set out in subsec. (7) of sec. 62.23, Stats.; and, (2) whether a restrictive definition of "family" is an appropriate means to carry out the zoning objective if it is reasonable.
Although the above questions can only be definitely answered by litigating specific ordinances, generally speaking, the breadth of impact of restrictive definitions of "family" suggests serious constitutional vulnerability. As stated in Boraas, supra:
 "Even if the Belle Terre ordinance could conceivably have a legitimate zoning objective, the classification established may well be vulnerable as too sweeping, excessive and over-inclusive. See Kirsch Holding Co. v. Borough of Manasquan, 59 N.J. 241, 281 A.2d 513
(1971); cf. Developments in the Law-Equal Protection, 82 Harv. L. Rev. 1065, 1082-1087 (1969). For instance, if it were aimed at maintaining population density at the level of traditional family units, it would not limit the number of unrelated occupants to two (2) persons per one-family dwelling, which admittedly is smaller than the size of the average family. Assuming such a purpose, a more permissive ordinance would suffice. Furthermore, such an objective could be achieved more rationally and without discrimination against unrelated groups by regulation of the number of bedrooms in a dwelling structure, by restriction of the ratio of persons to bedrooms, or simply by limitation of occupancy to a single housekeeping unit." 476 F.2d 817.
 Boraas was heavily relied upon by the United States District Court for the Eastern District of Wisconsin in its recent decision of Timberlake v. Village of Shorewood, 369 F. Supp. 456, (No. 72-C664 decided January 8, 1974) which held the following restrictive definition of "family" in Shorewood's zoning ordinance to be in violation of the Equal Protection Clause of the Fourteenth Amendment: *Page 43 
 "`FAMILY shall mean an individual, or 2 or more persons related by blood, marriage or legal adoption, or a group of not more than 3 persons who need not be related by blood, marriage or legal adoption, living together in a dwelling unit; included within the definition of a family shall be children placed with a family in a dwelling unit under the provisions of Ch. 48 Wis. Stats., whereby a foster home license is issued, provided that the number of children shall not exceed 4, unless all are in the relationship to each other of brother or sister.'" (Emphasis supplied.)
As in Boraas, the court ruled that the definition was not supported by any rational basis consistent with traditional zoning concepts and that there are less onerous means to achieve legitimate zoning objectives.
The effect of such ordinances on privately-owned family operated foster homes presents a prime example of an overly broad means to accomplish a questionable end. But since the language and impact of such definitions vary from municipality to municipality, their propriety may only be determined by the courts on a case by case basis. Accordingly, I cannot opine that such definitions may never legitimately preclude foster homes from certain use districts.
In summary, it is my opinion that foster homes owned, operated, or contracted for by the Department or a county agency are immune from local zoning ordinances by virtue of state immunity. Privately-owned foster homes and foster homes owned operated or contracted for by licensed child welfare agencies do not enjoy state immunity. Municipal foster home licensing ordinances are unenforceable. Zoning ordinances utilizing definitions of "family" to restrict the number of unrelated persons who may live in a single family dwelling are of questionable constitutionality.
RWW:WHW *Page 44